# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2524

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Samuel Turner, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 11, 2011
Filed: July 12, 2011

_____

Before RILEY, Chief Judge, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Samuel T. Turner of being a felon in possession of a firearm or ammunition in violation of 18 U.S.C. § 922(g)(1). Turner represented himself at trial and sentencing before the district court.[1] On appeal, he argues that he was mentally incompetent to proceed pro se both at trial and sentencing. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

I.

In July 2009, ATF agents obtained two search warrants, for Turner's home in Kennett, Missouri, and a storage unit rented by Turner. Officers went to Turner's home. After *Miranda* warnings, Turner agreed to speak with them. A search of the home revealed nothing of evidentiary value. Turner gave the officers a key to the storage unit. A search found a variety of ammunition, including shotgun shells and both .30-30 and .22 caliber rounds. Turner agreed to go to the police station for an interview.

Turner initially denied that the ammunition in the storage unit was his, explaining that some items there belonged to others, including his girlfriend (who had a key). After repeated denials, he offered to share information about drug dealers. The officers told him that they could not believe him until he was honest about the ammunition. Turner admitted he got the ammunition from his brother-in-law, adding that he had stored a handgun in a red shoe in the storage unit. He agreed to another search of the storage unit, signing a consent-to-search form. Upon arrival, Turner walked into the unit and pointed out the pair of red shoes with the handgun. An officer picked them up, finding a .22 caliber revolver and a box of ammunition. Turner admitted obtaining the handgun from the same brother-in-law, and correctly stated that it was loaded. He said he had fired it once the previous week. An officer, opening the cylinder of the revolver, found five live rounds of ammunition and one spent round.

The handgun was examined by a DNA criminalist at the Missouri State Highway Patrol. She determined that the handgun had the combined DNA of at least two persons, but that the DNA was degraded. She testified that the DNA from the handgun shared some DNA markers with Turner, who could not be excluded as a person who touched the revolver.

In December 2009, Turner was indicted for being a felon in possession of a weapon or ammunition. The Federal Public Defenders Office was appointed to represent him. In a Pretrial Services Report to the court, Turner stated that he had been diagnosed with paranoid schizophrenia in connection with a 2006 state prosecution and had been hospitalized previously in a mental health facility. He further said that he had been prescribed medication for his schizophrenia, but had not received it since his arrest three months earlier. In January 2010, Turner appeared with his attorney and waived his right to file pretrial motions; he later filed three pro se motions, which were denied. The case was set for a jury trial on April 5, 2010.

Three days before trial, Turner appeared before the district court and requested to represent himself. The district court immediately inquired:

> Court: Do you have any question - - any reason to question the defendant's mental capacity to proceed?
>
> Mr. Skrien [Defense Counsel]: Your Honor, there is some history as to diagnoses of mental illness on Mr. Turner's part. However, it's my belief in having conversations with him that he understands. You know, when we talk about his case he asks relevant questions, has relevant concerns. Obviously, I would prefer that he retain me, I be allowed to continue to represent him. I think that is just generally in a defendant's best interest.
>
> Court: So I take it you do not have any reason to question his competency?
>
> Mr. Skrien: No, sir.

The district court then discussed with Turner his request to proceed without counsel:

> Court: All right. Well, Mr. Turner, why is it that you want to represent yourself instead of having the benefit of excellent counsel?

-3-

Mr. Turner: I feel like I can defend myself.

Court: I'm sorry.

Mr. Turner: I feel like I'm able to best defend myself.

Court: Okay. Well, I strongly disagree with you on that because you don't know the rules of procedure and I have to - - you have to understand that you will be bound by the rules of evidence and you'll be bound by the rules of procedure and you don't know those rules. Do you understand what I'm saying?

Mr. Turner: Yes, Your Honor, I understand.

Court: Mr. Skrien does and, furthermore, he's investigated this case, he has prepared the case for trial. He is -- he is fully prepared altogether to represent you in a competent and effective manner and you're telling me that you do not want him to represent you.

Mr. Turner: Is there some capacity that I could retain Mr. Skrien as I proceed pro se?

Court: You could proceed with Mr. Skrien as your lawyer or you proceed pro se.

Mr. Skrien: Your Honor --

Court: As I understand it you are asking for hybrid counsel or representation and I might do that in a capital case but I'm not going to do that in a case like this.

Mr. Turner: So it's not necessary then, Your Honor.

The district court and Turner then discussed his current counsel:

Court: All right. Now you understand that you have this right to counsel?

Mr. Turner: Yes, Your Honor.

-4-

Court: And do you have any specific complaints about the way Mr. Skrien has represented you? I have not heard you say anything about that.

Mr. Turner: Mr. Skrien doesn't feel that I have good defense.

Court: Well, that doesn't necessarily mean that he's not representing you in a competent and professional manner.

Mr. Turner: If he doesn't feel I have a defense and he's my defense attorney, I don't have a defense.

Court: Well, you're entitled to a trial and he is bound to represent you in this case and he will represent you in this case and he will defend you in this case.

Mr. Turner: I understand, Your Honor. I'm still persuaded to proceed pro se.

The District Court inquired further about Turner's counsel:

Court: Well, Mr. Turner, it does appear that you are making an informed decision, you know you have this right to counsel. Mr. Skrien has investigated the case and is prepared to go to trial. Is that right, Mr. Skrien?

Mr. Skrien: Yes, Your Honor.

Court: And he will present whatever defenses are available to you. Correct?

Mr. Skrien: Yes, sir, Your Honor.

Court: And he does, unlike you, understand the rules of evidence and the rules of procedure so I strongly encourage you to use Mr. Skrien as your counsel in this case but I know I can't force you to do that. You are entitled under the law to represent yourself, and so are you telling me that's what you want to do?

Mr. Turner: Yes, Your Honor. Mr. Skrien doesn't feel I have a defense.

> Court: Well, you have a defense in the sense that you are entitled to a jury trial and that the jury must be convinced beyond a reasonable doubt that you are guilty. And so his defense is that he will hold the government to the proof; correct, Mr. Skrien?
>
> Mr. Skrien: Yes, sir, Your Honor.
>
> Court: You understand what I'm saying?
>
> Mr. Turner: Yes, Your Honor.

The district court then made its findings that Turner was competent and that he could represent himself. The court made one last appeal:

> Court: Finding that you are competent, this is an informed decision that you are making, I'll order Mr. Skrien to turn over your complete file to Mr. Turner with all of your investigation and any notes that you have and any preparation that you have but and then the jury instructions you'll need to give directly to Mr. Turner.
>
> Government: I provided a copy already to Mr. Skrien, but I will make sure those are done.
>
> Court: All right. Just one more time, Mr. Turner. You will be at the distinct disadvantage for the reasons that I've stated and are you sure that you want to represent yourself in this trial?
>
> Mr. Turner: Yes, I am, Your Honor.
>
> Court: All right. We'll proceed at nine o'clock Monday morning with pretrial conference and short jury selection at 9:30.

On April 5, 2010, the case was tried to a jury. Before the jury was called, the district court instructed Turner when and where to stand, and which microphone to use. The district court commented that Turner had some experience with the criminal justice system and that this was a fairly straightforward case. Turner requested that the rule on witnesses be imposed, and the government agreed to sequester its witnesses outside the courtroom.

Turner conducted his voir dire examination after the government completed its questioning. Beginning voir dire, Turner told the district court that in contrast to the government's questions, his questions would be "more along just a moral basis. I don't have any particular questions as to the case, just moral." The court said "That's fine."

Turner then asked the venire a series of religiously-based questions, asking them to raise their hands if they agreed. Most of these questions were objected to by the government. Turner asked whether they believed that Jesus forgives sins. He asked whether their sins were forgiven; the government objected and the objection was sustained. He asked whether Matthew was a saint; an objection was sustained. He asked whether they believed that God will return; an objection was sustained. He asked whether they had made a mistake in their lives and whether they believed in salvation. He asked whether a soul can overcome death and whether their lives were in God's hands. Objections to those two questions were sustained. Turner asked if a man can change his mind and if they believed that a man is permitted to change his mind if he made a mistake. He asked whether the blood of Jesus washes away sin; an objection was sustained. He asked if God's forgiveness was complete, without conditions.

Turner followed with a request for all the venirepersons who had *not* raised their hands in response to the prior question (whether God's forgiveness was complete) to now raise their hands so he could know who they were. Jurors 4, 8, 9, 14, 15 and 32 raised their hands. He asked them what they would do if God "does not wait for another year," and whether any of the jurors had been saved. Objections to those questions were sustained, and Turner rested. He requested that Juror 4 be struck for cause, citing "a lack of moral obligation." That request was denied. After the Government struck six jurors, Turner used only four of his ten peremptory strikes, striking Jurors 8, 9, 15 and 21.

Turner's opening statement was: "Ladies and gentlemen of the jury, I stand before you evident, accused and convicted but through - - but before my Father in Heaven, through my Lord and Savior Jesus Christ's blood, I am innocent, without guilt and shame. All right. Thank you."

The government presented six witnesses. Turner used several objections to begin cross-examination or argue that his recollection differed from the witness's. Turner cross-examined an ATF agent about his recollection of the discovery of the firearm, especially as to its location and whether Turner was near the weapon when he pointed it out to the officers. Turner asked whether the agent had spoken with him on the telephone about a drug investigation and whether he was assisting in that investigation. Turner did not question the next witness. Turner cross-examined the third witness, a city police officer, whether the officer had heard if the ATF agent had offered any benefits to Turner for cooperating by revealing information on drug trafficking. The next witness, also a city police officer, was cross-examined as to whether Turner had been a jail trusty, performed odd jobs around the jail during his incarceration, served a full term for his sentence, and made any attempts to escape. The DNA expert was cross-examined on whether it was possible to determine how many people touched the gun found in the storage unit.

After the government completed its case-in-chief, Turner did not testify or present any other evidence. He told the district court that this decision was his own, against the advice of his previous attorney. As far as Turner was concerned, his defense was going quite well—he told the court: "It's unbelievable, Your Honor, but I have to believe I will win." Turner's closing argument was:

> Ladies and gentlemen of the jury, which of you are without sin. He that have no sinful transgression let him judge first. I stand before this Court evident accused and convicted but before my Father which is in Heaven, through my Lord and Savior, Jesus Christ blood I am found innocent, without guilt and shame. Which of you is without mercy? He shall have

judgment without mercy and mercy rejoices against judgment. Thank you Your Honor.

The jury deliberated for 20 minutes and returned a guilty verdict.

Turner appeared for sentencing three months later, again pro se. The presentence investigation report ("PSR") verified that he suffers from schizophrenia and had not been taking his prescribed medication to control it before trial or sentencing. The PSR indicated that Turner's mental disability was severe enough for him to qualify for Social Security Disability benefits. According to the PSR, he had been hospitalized for mental illness, and found competent to proceed to trial in a 2006 case. The PSR reported that during a psychiatric evaluation in 2007, Turner said he heard voices that convinced him his cellmate was Moses and he "needed to assault Moses in order to quell a power struggle between God and Moses." Turner did not object to the PSR. At sentencing, the district court did not ask him any questions about his waiver of counsel for purposes of sentencing, his competency to be sentenced, or his competency to proceed pro se.

The Sentencing Guidelines range was 188-235 months, based on a total offense level of 33 and a criminal history category of IV. Turner was subject to a mandatory minimum sentence of 180 months as an Armed Career Criminal because of convictions for three violent felonies. *See* 18 U.S.C. § 924(e). The district court varied downward to the mandatory minimum and imposed a sentence of 180 months, finding that fifteen years was "more than enough" to satisfy 18 U.S.C. § 3553(a). As a condition of supervised release, the court ordered that Turner participate in a mental health program. This appeal followed.

II.

Turner challenges the district court's determination that his waiver of counsel was voluntary, knowing, and intelligent. Turner says that the district court did not sufficiently question him about his competency to proceed pro se. He also argues that the district court erred by failing to require a higher level of competency to represent himself than to stand trial. Finally, Turner contends the district court erred by not *sua sponte* ordering a competency hearing during trial in response to his bizarre behavior.

A.

This court reviews de novo a district court's decision to allow a defendant to proceed pro se. *United States v. Washington*, 596 F.3d 926, 935 (8th Cir. 2010). The Sixth Amendment guarantees a criminal defendant the right to self-representation along with the right to the assistance of counsel. *Faretta v. California*, 422 U.S. 806, 818-821 (1975); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942) (noting that "the Constitution does not force a lawyer upon a defendant."). Even though a defendant may conduct his own defense to his detriment by relinquishing the benefits associated with the right to counsel, his choice must be honored. *Faretta*, 422 U.S. at 834. "For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits. . . . [He] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835 (internal quotations marks and citations omitted).

The right to self-representation, once invoked, is not absolute. *Indiana v. Edwards*, 554 U.S. 164, 171 (2008). Before permitting a defendant to exercise the constitutional right to proceed pro se, the trial court must be satisfied that the waiver of counsel is knowing and voluntary. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993). "Warnings of the pitfalls of proceeding to trial without counsel . . . must be rigorously conveyed." *Iowa v. Tovar*, 541 U.S. 77, 89 (2004) (internal quotation

-10-

marks omitted); *see also **Shafer v. Bowersox***, 329 F.3d 637, 647 (8th Cir. 2003) ("[T]he Supreme Court has clearly established that the presiding court must inquire into [the defendant's] understanding of the right and must warn him of the dangers involved in order to ensure that he has full knowledge of the consequences" of proceeding pro se). The adequacy of the waiver depends on the particular facts and circumstances of each case, including the background, experience, and conduct of the accused. ***Edwards v. Arizona***, 451 U.S. 477, 482 (1981); ***Johnson v. Zerbst***, 304 U.S. 458, 464 (1938). However, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." ***Godinez***, 509 U.S. at 399; *see also **Tovar***, 541 U.S. at 89 (noting that "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation.") (internal quotation marks and citation omitted).

Before permitting a defendant to waive counsel, the trial court must be satisfied that the defendant is competent to stand trial. *See **Godinez***, 509 U.S. at 400. Due process prevents the trial of a defendant who lacks mental competency. ***Drope v. Missouri***, 420 U.S. 162, 171-72 (1975). Competency to stand trial requires the ability to understand the nature of the proceedings, to consult with counsel, and to assist counsel in preparing a defense. ***Id.*** at 171. In order to make a determination of competency, the district court should consider the behavior, demeanor, and prior psychiatric history of the defendant. ***Griffin v. Lockhart***, 935 F.2d 926, 930 (8th Cir. 1991).

Turner argues that the district court erred when it did not conduct a sufficiently penetrating and comprehensive examination into his competency or his waiver of counsel, either for trial or sentencing. Turner contends the district court erred by not addressing the statutory minimum and maximum sentences he faced, or conveying a more in-depth explanation of trial procedures, the basic rules of cross-examination, and the purpose of objections. Turner admits that the district court fulfilled its duty

to warn him of the dangers of giving up his right to counsel, but asserts it failed to make an assessment of his ability to understand the decision to waive counsel. For example, when Turner impliedly asked for standby counsel and the district court stated, "I might do that in a capital case but I'm not going to do that in a case like this," Turner responded "So it's not necessary then, Your Honor." He argues this exchange shows he completely failed to grasp the district court's meaning (that it was not required by law to appoint standby counsel for him), believing the court was indicating that he did not need standby counsel to help him in the trial because he was capable of handling the case alone. Turner further faults the district court for assuring him his case was "a fairly straightforward case," when the evidence at trial included the complicated "combined" DNA evidence and a possibly coercive interrogation by law enforcement.

The government responds that Turner voluntarily, knowingly, and intelligently waived his right to be represented by counsel after being thoroughly advised by the district court of the dangers and disadvantages of self-representation. According to the government, the entire record reflects that Turner knew and understood those dangers and disadvantages, and that the district court properly determined that he was competent and relied on his attorney's representations that he was competent. The government argues there was no evidence before the court that Turner suffered from a severe mental illness that would prevent him from representing himself.

The district court committed no error in finding Turner's waiver was knowing and voluntary. When he first indicated a desire to proceed pro se, he and the district court discussed for several minutes why he wanted to represent himself. The district court emphasized that it was a bad idea, and assured itself that his decision was not based on any shortcomings in his appointed counsel. Turner, no stranger to the criminal justice system, was told how his ignorance of the rules of procedure and evidence would prejudice his defense, and that his appointed counsel was far better positioned to put the government to its burden. While Turner might desire to have

been better informed on various aspects of trial procedure and the range of his potential sentence, a defendant's "technical legal knowledge" is "not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta*, 422 U.S. at 836.

In the course of his argument, Turner faults the district court for failing to follow the formal "requirements" and "obligations" for a valid waiver of counsel, invoking *United States v. Washington*, 596 F.3d 926, 935 (8th Cir. 2010). There, the defendant did not challenge the adequacy of the warnings the district court gave, which this court called "sufficient." *Washington*, 596 F.3d at 942. True, the district court advised Washington of the charges and the range of penalties that he faced, outlined trial procedures that he would have to follow if pro se, and explained the basic rules of cross-examination and the purpose for objections. *Id.* at 936-37. However, neither the Supreme Court nor this court has ever adopted a list of essential points that must be conveyed to a defendant in order for a waiver of counsel to be deemed knowing and voluntary. This precise argument was considered in *United States v. Kiderlen*, where this court rejected the idea that a valid waiver of the right to counsel must invariably be accompanied by specific warnings about the range of possible punishments, possible defenses, and lesser included offenses. *See **United States v. Kiderlen***, 569 F.3d 358, 364, 366-67 (8th Cir. 2009) (noting that the "key inquiry" is "whether the accused was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel.") (quoting ***Meyer v. Sargent***, 854 F.2d 1110, 1114 (8th Cir. 1988)).

This court upholds the grant of a defendant's motion to represent himself "if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self-representation." ***Kiderlen***, 569 F.3d at 364 (internal quotation marks and citation omitted). The district court adequately warned Turner of the dangers of

self-representation, and did not err in finding that he understood them and knowingly waived his right to counsel.

Turner also argues that the district court should have been alerted to the need for a more thorough evaluation of his mental competency before allowing him to proceed pro se, citing: 1) counsel's reference to "some history as to diagnoses of mental illness" in opining that he had no reason to question Turner's competency; 2) a Pretrial Services Report detailing that Turner had previously been diagnosed with paranoid schizophrenia and hospitalized in a mental health facility; and 3) Turner's remark that arguably indicates he failed to understand the district court's statement about the possibility of standby counsel.[2]

Based on the entire record, the district court did not err in the depth of its assessment of Turner's competency. Learning that Turner wished to proceed pro se, the district court immediately asked appointed counsel whether there was "any reason to question the defendant's mental capacity." Counsel replied that while there was a past diagnosis of mental illness, he thought Turner was competent based on their conversations about his case. Counsel noted that "he understands," and "asks relevant questions, has relevant concerns." The court, evidently desiring clarification, asked point-blank: "So I take it you do not have any reason to question his competency?" Counsel replied "No, sir." The court then pressed Turner for an explanation of why he wanted to represent himself. After speaking with him for several minutes about the decision, the district court explicitly found that he was competent and was making an informed decision to waive counsel. "Trial counsel's opinion should receive significant weight since '[c]ounsel, perhaps more than any other party or the court, is

---

[2] Turner does not argue on appeal that he should have been given standby counsel. *See* **United States v. Ladoucer**, 573 F.3d 628, 634 (8th Cir. 2009) (noting that "there is no constitutional difficulty where the defendant is provided the real alternative of choosing between adequate representation and self-representation.") (quotation omitted).

in a position to evaluate a defendant's ability to understand the proceedings.'" ***United States v. Denton***, 434F.3d 1104, 1112 (8th Cir. 2006) (quoting ***Balfour v. Haws***, 892 F.2d 556, 561 (7th Cir. 1989)).   The district court was in the best position to assess Turner's competency.  *See* ***Indiana v. Edwards***, 554 U.S. at 177 (noting that "the trial judge . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant.").

## B.

Turner contends that the district court erred in failing to explicitly make findings on whether he satisfied the higher standard of competency required to proceed pro se, as opposed to the lower competency required to stand trial.  This court reviews for clear error a district court's finding that a defendant is competent to stand trial or waive his right to counsel. ***United States v. Ghane***, 490 F.3d 1036, 1040 (8th Cir. 2007).  A district court's decision not to order a competency evaluation or hold a competency hearing is reviewed for abuse of discretion.  ***Washington***, 596 F.3d at 941.

Turner asserts that his diagnosis of paranoid schizophrenia and his trial behavior demonstrated that he lacked the capacity to conduct trial or sentencing proceedings by himself.  *See* ***Indiana v. Edwards***, 554 U.S. at 174-78 (ruling that the Constitution permits states to insist upon representation by counsel "for those competent enough to stand trial but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."); ***Massey v. Moore***, 348 U.S. 105, 108 (1954) ("One might not be insane in the sense of being incapable of standing trial and yet lack the capacity to stand trial without benefit of counsel.").

-15-

The government counters that the two competency standards are collapsed in the absence of a "severe mental illness." *See **United States v. Berry***, 565 F.3d 385, 391 (7th Cir. 2009) (noting that under *Edwards*, "'[s]evere mental illness' appears to be a condition precedent" on a trial court's ability to force counsel upon the unwilling). The government concludes that the record indicates Turner was fully competent, so the district court did not need to make separate findings on Turner's capacities to stand trial and represent himself.

This court's decision in *United States v. Washington* resolves this issue—without adopting a "severe mental illness" test to proceed pro se, or sorting out "severe" mental illnesses from mild. This is not a situation where counsel was foisted on Turner; the district court explicitly found him mentally competent. Accordingly, "while a defendant must be competent in order to proceed pro se, *Edwards* does not require that a trial judge: (1) conduct an inquiry into the competency of every defendant who requests to proceed pro se, or (2) hold a hearing prior to making a competency determination." ***Washington***, 596 F.3d at 941; *see also **Indiana v. Edwards***, 554 U.S. at 177-78 (stating that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so," but declining "to adopt . . . a more specific standard."). "Whether a competency evaluation is warranted is a determination within the discretion of the district court." ***United States v. Crawford***, 487 F.3d 1101, 1105 (8th Cir. 2007). *Edwards* clarified that district court judges have discretion to force counsel upon the discrete set of defendants competent to stand trial but incompetent to represent themselves. ***Washington***, 596 F.3d at 941. It does not mandate two separate competency findings for every defendant who seeks to proceed pro se.

Further, it is not at all clear that the district court's competency finding was confined solely to Turner's mental fitness to stand trial. The context of his colloquy with the district court was not a hearing to determine Turner's competency to stand

trial; it was his request to waive counsel and proceed pro se. Accordingly, the district court's explicit finding of competency was likely directed toward Turner's competency to represent himself—particularly where the finding was immediately followed by the district court indicating that Turner's appointed counsel should turn over his case files to Turner so that he could review them over the weekend before trial began.

In these circumstances, where none of the parties, including Turner or his attorney, sought any sort of inquiry into his competency, and the district court had the opportunity to observe and interact with him at length, the district court committed no error by failing to explicitly make a finding on Turner's competency to proceed pro se, and did not abuse its discretion in failing to order a mental evaluation before trial.

C.

Turner claims the district court erred by not *sua sponte* ordering a competency hearing after observing his behavior at trial. This court reviews for clear error a district court's finding that a defendant is competent to stand trial or waive his right to counsel. *Ghane*, 490 F.3d at 1040.

Due process prevents the trial and conviction of a defendant who is mentally incompetent, and requires that a hearing be held whenever evidence raises a sufficient doubt about the mental competency of an accused to stand trial. *Vogt v. United States*, 88 F.3d 587, 590 (8th Cir. 1996); *see also* 18 U.S.C. § 4241(a)-(b) (stating that a court "shall order" a competency hearing upon its own motion if "there is reasonable cause to believe" a defendant is not competent and that a court "may order" a psychological evaluation prior to such a hearing). "Whether a competency evaluation is warranted is a determination within the discretion of the district court." *Crawford*, 487 F.3d at 1105. Even when a defendant is competent beginning a trial, the district court must remain alert during trial to any indication that the defendant is unable to

-17-

meet the standard of competency to stand trial. ***Ghane***, 490 F.3d at 1041. Even if, in an individual case, no facts clearly show incompetency, a district court should pay attention to any irrational behavior, the defendant's demeanor during trial, available medical evaluations, and whether trial counsel questioned the defendant's competency. ***Vogt***, 88 F.3d at 591. However, not every manifestation of mental illness demonstrates incompetency to stand trial. ***Id.*** Neither low intelligence, mental deficiency, nor "bizarre, volatile, and irrational behavior" compels a finding of incompetency. ***Id.***

Turner argues that early in his trial, his behavior should have alerted the district court to his incompetency to represent himself. During voir dire, he asked many questions that manifested a hyper-religiosity inappropriate to the courtroom. His questions included: "Can you testify that your sins are forgiven? . . . Is Matthew a Saint? . . . If you believe God will return, raise your hand. . . . If you believe a soul can overcome death, raise your hand. . . . Do you believe the blood of Jesus washes away sins, raise your hands. . . ." He asserts that his actions during trial provided further evidence of his lack of competency to proceed pro se. He made opening and closing statements that focused on his innocence through the blood of Jesus Christ. He stated to the court near the end of trial, "It's unbelievable, Your Honor, but I have to believe I will win"—after he presented no defense to the government's evidence that he led police officers to his storage unit and pointed out the weapon and ammunition. He argues these circumstances, coupled with his previous diagnosis of mental illness, outweighed the fact that he was polite and not disruptive during trial.

The government argues there was "no evidence to cause the District Court to doubt Turner's competency," as "Turner did not exhibit irrational behavior at trial." The government does not explain how his opening and closing arguments, sprinkled with references to Jesus, were part of his trial strategy. However, the government contends that his voir dire was conducted in order to obtain a jury sympathetic to him. The government emphasizes that many of Turner's questions sought to identify

potential jurors who believed in forgiveness, second chances, and the idea that people make mistakes and then change—essentially an attempt at jury nullification. The government believes that given the strength of the evidence, finding a sympathetic jury was a logical trial strategy. The government also emphasizes that his cross-examination of the various government witnesses—in contrast to his voir dire questions—was devoid of references to religion, instead focusing on the evidence and the witness's recollection of events. He attempted to undermine the credibility of the government's witnesses (implying that the police offered him benefits to become an informant) and portray himself in a good light (eliciting that he had been a trusty and performed odd jobs around the jail during a prior incarceration).

The district court did not abuse its discretion in failing to *sua sponte* order a competency hearing during Turner's trial. While Turner did act in ways that appear bizarre or irrational, such behavior does not invariably compel a finding of incompetency. *Vogt*, 88 F.3d at 591. His demeanor was polite and respectful at all times. He invoked the rule on witnesses leaving the courtroom, used cross-examination to his benefit, and tried on several occasions to appeal to the jurors' consciences in an attempt for them to "forgive" him by finding him not guilty. The district court—in the best position to observe Turner after interacting with him at length—did not find Turner incompetent to continue with trial, and the evidence does not raise doubts sufficient to find an abuse of discretion. *Cf. Washington*, 596 F.3d at 941 (noting the deference owed to the district court's determinations based on its observations of the defendant) (citation omitted).

D.

Turner also argues that after receiving his PSR, the district court should have ordered a competency hearing before allowing him to represent himself at sentencing because the PSR's information indicated that his irrational statements during trial were

not merely religious rhetoric or passionate beliefs, but symptoms of mental illness. The PSR verified that Turner suffers from schizophrenia and had not been taking his prescribed medication to control this condition before trial or sentencing. It indicated that his mental disability was severe enough for Social Security Disability benefits. The PSR stated that Turner had been hospitalized for his mental illness. It noted that during a psychiatric evaluation in 2007 Turner reported having heard voices involving his need to "quell a power struggle between God and Moses."

Turner received the minimum sentence possible. Any error in failing to order a competency review for sentencing is thus harmless, as the district court was without power to impose a more lenient sentence than the mandatory minimum. *See Crawford*, 487 F.3d at 1108.

* * * * * * *

The judgment of the district court is affirmed.

_____