# United States Court of Appeals
### For the Eighth Circuit

_____

No. 18-3355

_____

United States of America

*Plaintiff - Appellee*

v.

Ryan Scott Luscombe

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 14, 2019
Filed: February 21, 2020

_____

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Following a jury trial, Ryan Luscombe was found guilty of three counts of wire fraud, in violation of 18 U.S.C. § 1343; two counts of mail fraud, in violation of 18 U.S.C. § 1341; and one count of money laundering, in violation of 18 U.S.C. § 1957. He was sentenced to 180 months imprisonment. On appeal, Luscombe argues that

the district court[1] erred by delaying its decision to revoke his pro se status until the third day of trial. Alternatively, he argues that it erred by terminating his self-representation. Luscombe also appeals his sentence, asserting that the district court procedurally erred and imposed a substantively unreasonable sentence. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Ryan Luscombe operated an investment business called Five Star Trading Group, Inc. (Five Star). Between January 2013 and March 2016, he ran a scheme to defraud Five Star's clients. Specifically, Luscombe lied to his clients about his past success in investing in order to obtain their money, and he then used the majority of those funds—$483,482.83—for his own personal expenditures, including the purchase of a 2010 BMW 750i for $27,999. In 2016, Luscombe falsely informed his clients that all of the money that they invested in Five Star was lost in trading and that Five Star would have to close down. In reality, Luscombe invested less than half of his clients' money, and the net trading loss that he incurred was approximately $4,600. Based on this conduct, Luscombe was charged with three counts of wire fraud, two counts of mail fraud, and one count of money laundering.

At Luscombe's arraignment, the magistrate judge appointed Assistant Federal Public Defender Ronna Holloman-Hughes to represent Luscombe. Luscombe wrote to the court multiple times to request the appointment of new counsel. Although the court initially denied the request, it later held a hearing on the issue. The magistrate judge determined that it would not appoint new counsel and informed Luscombe that, should he choose to proceed to trial without Ms. Holloman-Hughes, he would need

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

to either retain his own attorney or represent himself at trial.  Luscombe was released pending trial on a personal recognizance bond with conditions of release.

Luscombe later asserted that he wanted to represent himself at trial, and the magistrate judge conducted a hearing pursuant to Faretta v. California, 422 U.S. 806 (1975).  At the hearing, Luscombe was apprised of the difficulties of proceeding to trial without an attorney and was cautioned against such a course of action.  Luscombe acknowledged that he understood these challenges and was "fully prepared to accept the consequences if [he] fail[ed]."  He was also questioned about his knowledge of the charges, the rules of evidence and procedure, and the penalties that he faced if convicted.  Based on his responses, the magistrate judge concluded that Luscombe knowingly and voluntarily waived his right to counsel and permitted him to represent himself at trial.  The magistrate judge also offered to appoint a standby attorney, but Luscombe declined this offer.  Before trial, however, the court appointed Ms. Holloman-Hughes as Luscombe's standby attorney.

At trial, the district court had to repeatedly interrupt Luscombe and admonish him to follow the rules, to speak clearly for the court reporter and the jury, and to refrain from talking over witnesses.  For example, the district court, either sua sponte or in response to an objection from the government, stopped Luscombe ten times during his opening statement for making irrelevant or inappropriate comments, for delving into argument rather than summarizing the evidence that he expected to present, to remind him to speak clearly, and to inform him about the amount of time that he had used.  Similarly, the court frequently stopped and admonished Luscombe throughout the trial because of the manner in which he cross examined government witnesses.  Luscombe often interrupted and argued with witnesses, asked confusing and compound questions, asked questions that called for inadmissible testimony, tried to interject his own testimony, spoke unclearly and in a manner that was difficult for the jury and court reporter to understand, and took too much time in examining witnesses.  During the course of the trial, he also sent intimidating emails to one

potential government witness, the government's case agent, and his standby attorney. This prompted the magistrate judge to revisit his bail conditions, revoke his personal recognizance bond, and order Luscombe to be held in custody. On the third day of trial, and after repeatedly warning Luscombe to follow court rules, the district court terminated his self-representation and directed Ms. Holloman-Hughes to take over Luscombe's defense and complete the trial.

Luscombe was found guilty of all six counts. At sentencing, the district court calculated Luscombe's Guidelines range to be 97 to 121 months imprisonment. The court varied upwards and sentenced Luscombe to 180 months imprisonment. On direct appeal, Luscombe raises two issues concerning his self-representation at trial and appeals his sentence.

II.

Luscombe asserts that the district court erred in the way it handled his self-representation. He advances two alternative arguments in support of this assertion. Although Luscombe does not appear to challenge the validity of his initial waiver of counsel, he argues that the district court erroneously waited until the third day of trial to terminate his self-representation. Specifically, he contends that, based on his conduct, it should have been clear to the district court on the first day of trial that he was being ineffective in representing himself. He claims that his actions should have suggested to the district court that he was incompetent to proceed as his own counsel and that the district court should have sua sponte ordered a competency evaluation. By waiting, he argues that the district court violated his constitutional rights to effective counsel, to a fair trial, and due process. He also suggests that the district court's frequent interruptions undermined his ability to mount an effective defense.

-4-

Alternatively, Luscombe asserts that the district court erred by terminating his self-representation. He essentially argues that his conduct, while perhaps poor lawyering and annoying, did not amount to "seriously obstructive conduct" that warranted the drastic sanction of revoking his pro se status. Luscombe suggests that this action violated the Sixth Amendment and requires us to reverse and remand for a new trial.

A.

First, we consider Luscombe's argument that the district court erroneously waited until the third day of trial to terminate his self-representation. Ordinarily, we review de novo the district court's decision to terminate the defendant's right to represent himself at trial, see United States v. Mabie, 663 F.3d 322, 328 (8th Cir. 2011), and its decision not to hold a competency hearing or order a competency evaluation for an abuse of discretion. United States v. Turner, 644 F.3d 713, 723 (8th Cir. 2011). The government, however, urges us to apply plain error review to these issues because Luscombe failed to raise them at trial or to otherwise make contemporaneous objections.[2] See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 732 (1993). But it is unclear whether a defendant must formally object to the district court's decision to continue to allow him to represent himself at trial, or to the district court's failure to sua sponte order a competency hearing, in order to preserve these issues for our review. See, e.g., United States v. Stanley, 739 F.3d 633, 645 (11th Cir. 2014) ("The appropriate standard of review . . . thus presents an unsettled question."); United States v. Coleman, 871 F.3d 470, 474 (6th Cir. 2017). We need not address these issues, however, because we can affirm on each claim, respectively, under the ordinary de novo and abuse of discretion standards. See

_____

[2]The government concedes that Luscombe raised these issues in a motion for a new trial following the jury's verdict. Luscombe does not argue that this motion properly preserves the issue for our review.

Stanley, 739 F.3d at 645 (declining to reach the issue because defendant's arguments failed under both de novo and plain error standards).

The Sixth Amendment guarantees a defendant the right to represent himself at trial. Faretta, 422 U.S. at 818-821. "Even though a defendant may conduct his own defense to his detriment by relinquishing the benefits associated with the right to counsel, his choice must be honored." Turner, 644 F.3d at 720. Before a defendant may be allowed to exercise his right to self-representation, however, he must knowingly and voluntarily relinquish his right to counsel. Id. at 720-21. "The adequacy of the waiver depends on the particular facts and circumstances of each case, including the background, experience, and conduct of the accused." Id. at 721. Before allowing him to waive his right to counsel, the district court must question the defendant about his knowledge of the right and adequately warn him of the dangers involved in proceeding pro se. Shafer v. Bowersox, 329 F.3d 637, 647-48 (8th Cir. 2003). It must also be satisfied that the defendant is competent to waive the right and stand trial. Turner, 644 F.3d at 721.

The record shows that Luscombe knowingly and voluntarily relinquished his right to counsel "after being repeatedly warned of the dangers and disadvantages of doing so." United States v. Reed, 668 F.3d 978, 986 (8th Cir. 2012). The magistrate judge held a Faretta hearing, where she carefully inquired about Luscombe's knowledge of the charges, the rules of evidence and procedure, and his right to be represented by an attorney. The magistrate judge repeatedly cautioned Luscombe against exercising his right to self-representation and even offered to appoint standby counsel. Although Luscombe made some odd comments during the hearing, there was no reason to believe that he was incapable of waiving counsel or incompetent to stand trial. See United States v. Crawford, 487 F.3d 1101, 1105 (8th Cir. 2007) ("Unless evidence raises sufficient doubt about a defendant's competence, further inquiry is not required." (internal quotation marks omitted)).

Luscombe argues, however, that on the first day of trial, it should have been clear to the district court that Luscombe could not effectively represent himself, requiring the court to either immediately terminate his self-representation or conduct a mental competency evaluation pursuant to Indiana v. Edwards, 554 U.S. 164, 177-78 (2008). We find this argument unpersuasive. Luscombe may have been ineffective at mounting his own defense, but he knowingly and voluntarily waived his right to counsel, and "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" Faretta, 422 U.S. at 834 n.46; see also Reed, 668 F.3d at 987 (noting that "the competence required is the competence to *waive the right*, not the competence to represent himself" (internal quotation marks omitted)); United States v. Johnson, 610 F.3d 1138, 1140 (9th Cir. 2010) (noting that after validly waiving the right to counsel, defendants "had the right to represent themselves [at trial] and go down in flames if they wished, a right the district court was required to respect").

Moreover, Luscombe's conduct during the first three days of trial did not suggest that he was incompetent to waive counsel. To be sure, Luscombe did engage in obstructionist behavior and did a poor job representing himself. This included making inappropriate comments during his opening argument, frequently interrupting and arguing with witnesses, trying to interject his own testimony while examining witnesses, abusing the subpoena process, and sending threatening emails to witnesses during the course of the trial. This conduct, however, does not suggest that Luscombe was incompetent to waive counsel. See Turner, 644 F.3d at 725-26 ("While [defendant] did act in ways that appear bizarre or irrational, such behavior does not invariably compel a finding of incompetency."). The district court, in rejecting his motion for a new trial, found that, "[h]aving been in the courtroom during the whole trial, there was nothing in my opinion that had any warning signs [that Luscombe was not competent.] . . . [A]s to the argument regarding his mental competency, the Court

does not find . . . that it's meritorious." In light of the trial record, we agree with this finding.

Similarly, the district court did not abuse its discretion in failing to sua sponte order a competency hearing. Indeed, "a competency determination is necessary only when a court has reason to doubt the defendant's competence." Reed, 668 F.3d at 986 (quoting Godinez v. Moran, 509 U.S. 389, 401 n.13 (1993)). In reviewing the district court's decision not to hold a competency hearing, we consider whether any party requested a competency evaluation of the defendant, whether the district court's observations of the defendant suggested a need for a hearing, and whether the district court actually made a finding as to the defendant's competency. See, e.g., United States v. Washington, 596 F.3d 926, 941 (8th Cir. 2010). Additionally, whether the defendant suffers from a mental illness is also relevant. See id. Here, neither party, nor any attorney, sought a competency hearing for Luscombe; the district court's observation of Luscombe did not suggest any need for such hearing; and the magistrate judge found that Luscombe validly waived his right to counsel. Further, Luscombe does not suggest that he suffers from a mental illness or impairment. For these reasons, and in light of the fact that Luscombe acted cogently at trial, "the evidence does not raise doubts sufficient to find an abuse of discretion." Turner, 644 F.3d at 726.

Accordingly, we hold that the district court did not err in failing to sua sponte revoke Luscombe's right to self-representation on the first day of trial or to hold a competency hearing.[3] Similarly, it did not abuse its discretion in declining to grant a

---

[3]Luscombe also argues that the district court undermined his right to a fair trial by frequently interrupting him and giving him advice on how to be more effective in his self-representation. We find this argument to be unconvincing. While a "pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to

new trial on this basis. See United States v. Anwar, 880 F.3d 958, 969 (8th Cir. 2018) (standard of review).

B.

Next, we consider whether the district court erred by terminating Luscombe's self-representation during the third day of trial and in directing standby counsel to take over his defense. We review de novo the district court's decision to terminate the defendant's right to self-representation. Mabie, 663 F.3d at 328. Again, the government urges us to apply plain-error review, but we decline to reach the issue because we can affirm even under de novo review.

The right to self-representation is not absolute. United States v. Krug, 822 F.3d 994, 1000 (8th Cir. 2016) (per curiam). The district court may terminate a defendant's right to self-representation "when the defendant engages in serious obstructionist misconduct." United States v. Mosley, 607 F.3d 555, 558 (8th Cir. 2010) (internal quotation marks omitted). Indeed, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom or a license not to comply with relevant rules of procedural and substantive law." Mabie, 663 F.3d at 328 (internal quotation marks omitted). While defendants "have a right to present unorthodox defenses and argue their theories to the bitter end," which may "require the trial court to tolerate numerous nonsensical pleadings, even occasionally wacky behavior," the district court need not

_____

question witnesses, and to address the court and jury," McKaskle v. Wiggins, 465 U.S. 168, 174 (1984), the district court has the inherent authority to manage the proceedings and to enforce various procedural rules. Moreover, Luscombe was given fair warning of the difficulties in proceeding pro se, which include the fact that he was inexperienced in presenting arguments and examining witnesses and likely unfamiliar with the rules of evidence and criminal procedure.

-9-

suffer through disruptive or defiant behavior.  United States v. Smith, 830 F.3d 803, 810 (8th Cir. 2016) (internal quotation marks omitted).

Although the district court did not make a clear finding on this issue, after carefully reviewing the trial record, we conclude that the totality of Luscombe's behavior supported the court's decision to terminate his self-representation.  See Lane v. Peterson, 899 F.2d 737, 742 (8th Cir. 1990) (noting that "[w]e may affirm a judgment on any ground supported by the record even if not relied upon by the district court").  Indeed, and as mentioned above, Luscombe repeatedly and frequently defied the district court's orders not to argue with witnesses, not to interrupt witnesses, not to interject his own testimony during his examination of witnesses, to speak clearly and slowly for the jury and court reporter, and to speed up his cross examinations. Luscombe was repeatedly admonished by the district court to follow its directives, and his right to self-representation was terminated only after fair warning that continued misconduct would result in such an action.  Luscombe's conduct was more than just poor "lawyering"—it interrupted the trial process and was seriously obstructive.  See Wiggins, 465 U.S. at 173 ("[A]n accused has a Sixth Amendment right to conduct his own defense, provided . . . that he is able and willing to abide by rules of procedure and courtroom protocol.").  Further, Luscombe attempted to serve a number of harassing subpoenas on victims in the case, which were quashed by the magistrate judge, and he sent threatening emails to government witnesses and his standby attorney during the course of the trial, prompting the magistrate judge to revisit his bond conditions and later order him jailed.[4]  See, e.g., Mabie, 663 F.3d at 329

---

[4]Luscombe asserts that this conduct should not be considered because the district court did not explicitly or implicitly base its decision to revoke his right to self-representation on it.  First, he points out that he attempted to serve the subpoenas before the trial began, and that if the district court was truly concerned about this behavior, it could have terminated his right to self-representation at that time.

-10-

(explaining that repeated in-court interruptions, attempted use of subpoenas to harass witnesses, and the mailing of a threatening letter to his attorney justified terminating defendant's right to self-representation). Such actions further evince a disregard for the rules and support a finding that the totality of Luscombe's conduct was seriously obstructive to the proceedings. Cf. Smith, 830 F.3d at 810-11 (district court erred in terminating right to self-representation when defendant failed to appear at a pretrial hearing, to respond to the government's proposed jury instructions and plea offer, to submit a statement of the case, and to confer with the government's counsel about these issues). Accordingly, we hold that the district court did not err in terminating Luscombe's right to self-representation on the third day of trial.

## III.

Lastly, we consider Luscombe's argument that his sentence was a product of procedural errors and was substantively unreasonable. We review the sentence imposed by the district court for an abuse of discretion. United States v. Bryant, 606 F.3d 912, 918 (8th Cir. 2010) (citing Gall v. United States, 552 U.S. 38, 46 (2007)).

---

Second, he notes that although he sent the threatening emails during the course of the trial, his bond was revoked only after his self-representation was terminated. However, as noted above, "[w]e may affirm a judgment on any ground supported by the record even if not relied upon by the district court." Lane, 899 F.2d at 742. In any event, the facts in the record suggest that the trial court decided to terminate Luscombe's self-representation based partly on these actions. Indeed, the district court was aware of this conduct—for example, it discussed the quashing of the subpoenas on the second day of trial, and the first threatening email was sent between the second and third days of trial. That the district court was initially patient with Luscombe, electing to terminate his self-representation only after numerous incidents and warnings, including the subpoenas and emails, supports our conclusion.

In conducting this review, we "initially review a sentence for significant procedural error and then, if necessary, for substantive reasonableness." Id. "In reviewing a sentence for significant procedural error," we review the "district court's factual findings for clear error and application of the Guidelines de novo." Id. Such errors include failing to calculate, or incorrectly calculating, the Guidelines range; treating the Guidelines as mandatory; failing to consider the § 3553(a) factors; basing the sentence on clearly erroneous facts; and failing to sufficiently explain the sentence. Id.

If there is no procedural error, we then consider the substantive reasonableness of the sentence under the totality of the circumstances. Id. at 920-21. The sentencing court abuses its discretion if it fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in weighing the appropriate factors. Id. at 921. "[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc) (quoting United States v. Gardellini, 545 F.3d 1089, 1090 (D.C. Cir. 2008)).

Luscombe argues that the district court committed a procedural error and imposed a substantively unreasonable sentence because it failed to explain why it varied upward from his advisory range of 97 to 121 months imprisonment to 180 months imprisonment. Further, he suggests the district court incorrectly varied upward based on factors already taken into account by the Guidelines and points out that the government did not request an upward variance. He also complains that the resulting sentence exceeds those in other fraud cases.

-12-

Contrary to Luscombe's arguments, the district court adequately explained the basis for the upward variance in light of the § 3553(a) factors. Accordingly, we find no procedural error. Indeed, the court indicated that it considered the information contained in the pre-sentence investigation report, the evidence presented at trial, and the parties' submissions, and it explicitly considered this information in light of the § 3553(a) factors. In particular, it focused on the fact that Luscombe executed a "virtually identical scheme just immediately preceding this scheme" and on Luscombe's refusal to accept responsibility for, or show any remorse over, his actions. The district court noted that Luscombe's refusal to acknowledge his crimes separated "this case from 99 percent of every other case that comes in for sentencing" and that his tendency to blame his conduct on a motorcycle accident that killed his then girlfriend was "disturbing." This was a sufficient explanation for the sentence and the court's upward variance. See United States v. Richart, 662 F.3d 1037, 1049 (8th Cir. 2011) (district court adequately explained upward variance where it stated that it considered § 3553(a) factors and gave reasons for the sentence); see also United States v. Benton, 627 F.3d 1051, 1055 (8th Cir. 2010) ("Although the court could have made specific reference to other factors relevant under § 3553(a), we are satisfied that the court was aware of the statute and adequately considered it in determining the appropriate sentence.").

Similarly, we find no substantive error. "When the district court imposes a sentence outside the Guidelines range, . . . [we] 'may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" United States v. Osei, 679 F.3d 742, 747 (8th Cir. 2012) (quoting Gall, 552 U.S. at 51). Again, the district court stated that it considered various § 3553(a) factors in light of the facts of the case, and it was within the court's discretion to decide how much weight to give each factor—even if it arrived at a sentence that was significantly longer than the high

-13-

end of Luscombe's Guidelines range. See United States v. Gasaway, 684 F.3d 804, 808 (8th Cir. 2012).

The remainder of Luscombe's arguments are equally unpersuasive. First, the district court was allowed to vary upwards on factors already accounted for by the Guidelines. See United States v. David, 682 F.3d 1074, 1077 (8th Cir. 2012) ("[F]actors that have already been taken into account in calculating the advisory Guidelines range can nevertheless form the basis of a variance."). Second, that the government did not seek an upward variance does not mean that the sentence was substantively unreasonable. See Gasaway, 684 F.3d at 806, 808 (holding that the district court did not abuse its discretion in weighing the relevant § 3553(a) factors when it imposed a sentence that was nearly double what the government recommended). Third, although Luscombe suggests that his sentence is unreasonable because it is longer than the average sentence in fraud cases, for the reasons set forth above, we are satisfied that the district court did not abuse its discretion in arriving at its sentence under the totality of the circumstances and in light of the relevant § 3553(a) factors.

Accordingly, we reject Luscombe's argument that his sentence was procedurally flawed and substantively unreasonable.

## IV.

For these reasons, we affirm the judgment of the district court.

_____