# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-2681

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Bret Tschacher, | * | |
| | * | |
| Appellant. | * | |

———————

Submitted: March 16, 2012
Filed:  August 2, 2012

———————

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

———————

SMITH, Circuit Judge.

A jury found Bret Tschacher guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On appeal, Tschacher argues that the district court[1] erred by (1) permitting Tschacher to represent himself pro se, (2) denying his motion to suppress evidence recovered from a warrantless search of his vehicle, and (3) denying his motion for judgment of acquittal because the evidence was insufficient to prove that Tschacher knowingly possessed the weapons discovered in the truck that he was driving. We affirm.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

## I. *Background*

Tschacher was charged in a two-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and criminal forfeiture under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c).

### A. *Motion to Suppress*

After his indictment, Tschacher moved to suppress evidence, claiming that his Fourth Amendment rights were violated because his vehicle was searched without a warrant, valid consent, reasonable suspicion, or probable cause.[2] Following an evidentiary hearing on Tschacher's motion to suppress, the magistrate judge made the following factual findings. *See United States v. Tschacher*, No. 4:09CR3025, 2010 WL 2682517, at *1–2 (D. Neb. May 20, 2010) (unpublished).

On December 26, 2008, Nebraska State Trooper Mickie Downing Jr. saw Tschacher's pickup truck "roll through a stop sign in Chadron, Nebraska." *Id*. at *1. In response, "Trooper Downing activated his lights and initiated a traffic stop of the pickup. During the stop, Trooper Downing asked Tschacher for his driver's license and vehicle registration. Tschacher produced the registration but stated he did not have a valid driver's license." *Id*.

After Tschacher informed Trooper Downing that he lacked a valid driver's license, Trooper Downing requested that Tschacher accompany him to his patrol car. *Id*. "Trooper Downing conducted a brief pat[-]down search of Tschacher and then escorted Tschacher to the front passenger seat of the patrol car." *Id*. After Tschacher was in the patrol car, Trooper Downing asked Tschacher a series of personal-

---

[2]Tschacher also sought suppression of statements that he made to the arresting officer, arguing that the officer violated his Fifth Amendment privilege against self-incrimination and *Miranda v. Arizona*, 384 U.S. 436 (1966). The district court concluded that Tschacher's rights were not violated. Tschacher has not challenged this determination on appeal.

information questions, such as address and date of birth. *Id*. "Trooper Downing reported Tschacher's name and date of birth to dispatch. Dispatch responded that Tschacher's driver's license was suspended. Upon questioning by Trooper Downing, Tschacher admitted that he knew his license was suspended." *Id*. Trooper Downing then requested that Tschacher exit the patrol car. *Id*. Trooper Downing handcuffed Tschacher and placed him in the back seat of the patrol car. *Id*. Trooper Downing did not read Tschacher his *Miranda* rights during the traffic stop. *Id*.

"With Tschacher's permission, Trooper Downing returned to the pickup to replace the vehicle registration." *Id*. Trooper Downing then searched Tschacher's truck and "discovered a handgun in a 'miniature backpack' and a rifle. Trooper Downing called in the gun descriptions and serial numbers to dispatch, and dispatch reported Tschacher was a convicted felon." *Id*.

After Trooper Downing returned to the patrol car, "Tschacher immediately asked Trooper Downing to return to the pickup to retrieve a bag full of what Tschacher referred to as 'legal papers.'" *Id*. In response, "Trooper Downing asked what the 'legal papers' pertained to, 'child custody stuff' or something else." *Id*. Tschacher explained that "the papers were related to the guns." *Id*. The following exchange then occurred:

> Trooper Downing: That's what I'm asking you. They're saying that you're a convicted felon.
>
> Tschacher: That's a crock of crap. If you'll get those papers and stuff and let me out of these cuffs so I can show you something, I will show you something.
>
> Trooper Downing: Okay.

Tschacher: I've fought this thing and I've fought it and I've fought it and I've got the papers to prove its garbage and the State of Nebraska refuses to deal with it.

Trooper Downing: Okay. What was the . . . what felony were you arrested for? I'm starting back at the beginning. I'm not asking you if you were guilty or not guilty.

*Id*. at \*1–2 (alteration in original).

According to Tschacher, he had been "arrested for a felony theft, but [he] denied committing the felony and provided some additional background regarding his legal proceedings on the felony theft charges and his subsequent probation." *Id*. at \*2. "Tschacher and Trooper Downing did not discuss the matter further and Trooper Downing retrieved the papers from the pickup." *Id*.

The magistrate judge recommended that the district court deny the motion to suppress, concluding that the warrantless search of Tschacher's vehicle that occurred prior to the Supreme Court's decision in *Arizona v. Gant*, 556 U.S. 332 (2009), did not violate Tschacher's rights under the Fourth Amendment. *Id*. at \*2–3. The magistrate judge recognized that

Trooper Downing did not search the defendant's vehicle for evidence related to driving under a suspended license, and by [the] time [that] the vehicle search was conducted, the defendant was in handcuffs and seated in the officer's vehicle. Therefore, neither of the exceptions announced in *Gant* authorized a search of defendant's vehicle as incident to his arrest, and the trooper's vehicle search violated the Fourth Amendment under the *Gant* decision.

*Id*. at \*3. However, the magistrate judge concluded that because Trooper Downing acted in accordance with the then-existing case law when he conducted the

-4-

warrantless search and no deterrent effect would be gained by applying *Gant* retroactively to Tschacher's case, suppression of the evidence was unwarranted. *Id.* at \*4.

The district court adopted the magistrate judge's report and recommendation and denied Tschacher's motion to suppress. *United States v. Tschacher*, No. 4:09CR3025, 2010 WL 2696154 (D. Neb. July 1, 2010).

## B. *Self-Representation*

The case then proceeded to trial. Prior to jury selection, Tschacher's court-appointed counsel informed the district court that Tschacher "desire[d] to represent himself." The court asked counsel whether he was "satisfied that Mr. Tschacher is physically and mentally competent." Counsel responded:

> I am, yes. I know that he's got a heart condition and so I'll—I would have to let him speak to that, but I think he's mentally competent. He knows what's going on. He has particular ideas about his case as you know. I mean, he's raised these ideas throughout.
>
> We had a hearing back—I think it was last November—October, November where Mr. Gross was appointed as stand-by counsel to advise Mr. Tschacher about whether he and I should continue—meaning Mr. Tschacher and I should continue with our attorney-client relationship. That was decided. Ultimately, Mr. Tschacher said that he would keep me as his counsel. That was all done in front of Judge Zwart. And then today Mr. Tschacher advises me that he would prefer to represent himself.

The district court then informed Tschacher that he had "the right to represent [himself]" and asked Tschacher whether that was what he "want[ed] to do." Tschacher replied, "Yes, I choose to represent myself." Thereafter, the following exchange occurred between the court and Tschacher:

-5-

THE COURT: All right. Well, before I decide whether to let you do that, you and I have to have a conversation. If you decide to represent yourself, then in general I will hold you to the same standard that I hold lawyers to. I won't give you a break because you're a layperson.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Tschacher, while you in general have a right to represent yourself, it is my experience generally that people who represent themselves, particularly if they're laypeople, make a horrible mistake for a variety of reasons.

The first reason is they don't have the objectivity to understand fully what's in their best interests and more particularly, they typically overlook defenses that might be available to them that a legally trained person would see but a lawyer [sic] would not.

Indeed in this case I suspect that there is a potential factual defense that if you represent yourself you may impede and so I ask you seriously to reconsider your decision to represent yourself.

With that in mind do you need additional time to consider your decision?

THE DEFENDANT: A little bit.

(Alteration in original.)

Tschacher requested "a few minutes" to discuss the matter with a friend seated in the courtroom. The court asked Tschacher whether he was paying the "friend" for legal advice, and Tschacher responded, "No, sir." Before giving Tschacher additional time to discuss the matter with his friend, the district court further explained to

-6-

Tschacher the standard the court would hold Tschacher to in representing himself, stating:

> Now, if you decide to represent yourself, in addition to holding you to the—essentially the same standard that I'll hold any lawyer to, you must understand that there's going to be some practical problems and let me give you a highlight of some of them.
>
> When we select a jury, if you represent yourself, you're going to have to do the jury selection. If you represent yourself, you're going to have to make the opening statement. If you represent yourself, you'll have to make objections during trial if you think they're appropriate to —particularly to preserve whatever matter you want to preserve on appeal.
>
> If you represent yourself, you're going to have to make a closing argument, and if you represent yourself, you're going to have to familiarize yourself with the jury instructions, and you're going to have to be prepared to make appropriate objections.
>
> Furthermore, Mr. Tschacher, I have ruled that the pardon that you rely on from Judge Moran, basically a certification that you satisfied his probation order, is not a defense in this case and if you present information regarding that pardon, I will instruct the jury to disregard it.
>
> Do you have any questions about what I've just told you?

Tschacher responded that he had no questions. The court then asked Tschacher's court-appointed counsel whether counsel would "serve as stand-by counsel" if Tschacher chose to represent himself. Counsel indicated that he would. The court advised Tschacher that if he decided to proceed pro se, then the court would require stand-by counsel "to sit with [Tschacher] at counsel table and if [Tschacher] want[ed], [he] [could] consult [stand-by counsel] regarding questions [Tschacher] [had] about legal procedures." The court clarified that stand-by counsel

was "not obligated to provide [Tschacher] with tactical or strategic advice"; instead, stand-by counsel's obligation was "limited" "to answer[ing] specific questions [Tschacher] put to him." The court asked Tschacher whether he had any questions about stand-by counsel, and Tschacher responded, "No, sir."

The court recessed for ten minutes to permit Tschacher to consult with his friend. After the recess, the district court asked Tschacher whether he had "consulted with [his] friend," and Tschacher responded that he had. The court asked Tschacher what he wanted to do, and Tschacher stated that he wanted a continuance "to prepare [himself] for this." The court denied Tschacher's request for a continuance. The court asked Tschacher whether he wanted to represent himself or proceed with court-appointed counsel. Tschacher responded, "I'll stay with my own representation." The district court accepted Tschacher's request and appointed stand-by counsel. At no time during trial did Tschacher indicate that he wanted counsel to represent him or question the district court's decision to permit him to proceed pro se.

## C. *Trial*

At trial, Trooper Downing testified consistent with his testimony at the evidentiary hearing. Relevant to the present appeal, he testified that after determining that Tschacher's license was suspended, Trooper Downing "placed [Tschacher] in handcuffs and told him [that] he was under arrest." After arresting Tschacher, Trooper Downing "placed [Tschacher] in the caged area of [his] patrol unit." Trooper Downing testified that Tschacher asked Trooper Downing to put "his registration back in the vehicle." Trooper Downing asked Tschacher whether he wanted Trooper Downing to call someone to retrieve the vehicle, and Tschacher told Trooper Downing who to call.

After placing the call, Trooper Downing testified, "I [then] took his registration back to his pickup and placed it in the visor as—as he requested and then I—and then while I was there I began a search incident to arrest." Trooper Downing located "a

-8-

small backpack" or "small nylon bag with several zippers on it." The bag was "on the bench part of the seat where you actually sit" in the center of the pickup truck. According to Trooper Downing, the bag was "within arm's reach easily" of the driver. Trooper Downing "zipped open the top [of the bag], opened it up[,] and located a handgun." Trooper Downing testified that the weapon "was a .40-caliber UZI Eagle pistol." After finding the handgun in the pickup truck, Trooper Downing secured it in his patrol car.

After securing the handgun, Trooper Downing returned to the pickup truck to continue searching the vehicle. Trooper Downing stated that he next looked behind the driver's seat of the truck. Once he folded the driver's seat forward, he testified that he observed "a nylon rifle case." Trooper Downing "looked inside the sleeve and . . . could see the serial number to that particular weapon"—a Savage .300 caliber rifle. He then "called . . . dispatch and had them run a criminal history on Mr. Tschacher." Once he determined that Tschacher had a prior felony conviction, Trooper Downing then secured the rifle in his patrol car. Trooper Downing saw no round in the chamber, but the rifle magazine was loaded.

According to Trooper Downing, prior to securing both weapons in his patrol car, Tschacher asked Trooper Downing if he would obtain some papers from the pickup truck. Trooper Downing asked Tschacher "what kind of papers they were," and Tschacher replied that "they were about the guns." Tschacher told Trooper Downing that the papers were located behind the driver's seat of the pickup truck. Tschacher told Trooper Downing that "he takes those papers with him often or all the time." Trooper Downing then asked Tschacher about his felony convictions, and Tschacher "said that he had been arrested for a felony theft and that he'd been arrested for a felon in possession of a firearm." According to Trooper Downing, Tschacher seemed unsurprised that Trooper Downing found guns in Tschacher's pickup truck.

Tschacher did not request a motion for judgment of acquittal at the conclusion of the government's case-in-chief. He called his wife, Waya Jones, to testify in his defense. Jones testified that she and Tschacher registered the pickup truck in both of their names and that they both used the truck. She also testified that she had put the guns in the pickup truck. When asked whether Tschacher knew that Jones had guns, Jones responded that Tschacher knew that she had guns but "didn't know at what time I had guns in my presence." According to Jones, "that particular time that [the pistol] was in the [pickup truck] [she] had forgotten to take it out of [her] purse when [she] went to town and [she] had put it in the pouch because [she] knew [she] wasn't able to take it into the doctor's office." She again acknowledged that Tschacher knew that she had weapons, "but he didn't know what . . . day or what time [Jones] had the weapons on [her person]." According to Jones, she "tried to make sure" that she was present in the truck with the firearms; however, there were "a couple of times that [she] had forgotten to take the . . . firearm[s] out." She confirmed that both she and Tschacher drove the truck.

Jones testified that Tschacher knew that Jones had guns and a concealed carry permit because he had been present when she purchased the .40-caliber pistol and the rifle. Jones also testified that both she and her husband used the backpack found in the truck, where Trooper Downing recovered the pistol. But she maintained that "he never knew where the gun was." However, upon questioning, Jones confirmed that Tschacher knew that there could be guns in the truck but that she attempted to hide them from Tschacher.

Tschacher testified in his own defense that he was unaware that the guns were present in the truck at the time that Trooper Downing stopped him. On cross-examination, he admitted that he had been convicted of a felony theft in 1992 and of being a felon in possession of a firearm in 2001. He further admitted that the truck he was driving was registered to him and Jones and that he was the sole occupant of the truck at the time Trooper Downing stopped him. When asked whether he told Trooper

-10-

Downing that he "wanted some papers" out of the truck after Trooper Downing located the guns in the truck, Tschacher testified, "When I realized that there [were] guns in the truck, then I knew what was coming." He admitted to telling Trooper Downing that the papers pertained to the guns. He did not "recall" telling Trooper Downing that he was surprised that there were guns in the truck.

At the conclusion of trial, Tschacher moved for judgment of acquittal, and the district court denied the motion. The jury found Tschacher guilty of being a felon in possession of a firearm, and the district court sentenced Tschacher to 21 months' imprisonment.

## II. *Discussion*

On appeal, Tschacher argues that the district court erred by (1) permitting Tschacher to represent himself pro se, (2) denying his motion to suppress evidence recovered from a warrantless search of his vehicle, and (3) denying his motion for judgment of acquittal because the evidence was insufficient to prove that Tschacher knowingly possessed the weapons discovered in the truck that he was driving.

## A. *Self-Representation*

Tschacher contends that the district court erred in permitting Tschacher to represent himself pro se at trial, as it failed to conduct a proper and adequate hearing to determine Tschacher's fitness to represent himself. According to Tschacher, although the district court "conducted a minimal inquiry" of Tschacher, such inquiry was "cursory and was not a detailed, probing, analytical inquiry sufficient to determine if Mr. Tschacher was truly capable of making a true knowing, intelligent[,] *and* voluntary waiver of his constitutional right to counsel."

We review de novo a district court's determination to permit a defendant to proceed pro se. *United States v. Turner*, 644 F.3d 713, 720 (8th Cir. 2011). Under the Sixth Amendment, a criminal defendant has "the right to self-representation along

-11-

with the right to the assistance of counsel." *Id*. A defendant's choice to proceed pro se "must be honored," "[e]ven though [the] defendant may conduct his own defense to his detriment by relinquishing the benefits associated with the right to counsel." *Id*.

> "For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits. . . . [He] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open."

*Id*. (alterations in original) (quoting *Faretta v. California*, 422 U.S. 806, 835 (1975)).

Once a defendant invokes his right to self-representation, such right "is not absolute." *Id*. "Before permitting a defendant to exercise the constitutional right to proceed pro se, the trial court must be satisfied that the waiver of counsel is knowing and voluntary." *Id*. at 720–21. The court must "rigorously convey[]" "[w]arnings of the pitfalls of proceeding to trial without counsel." *Id*. at 721 (quotation and citation omitted). "The adequacy of the waiver depends on the particular facts and circumstances of each case, including the background, experience, and conduct of the accused." *Id*. But "the competence that is required of a defendant seeking to waive his right to counsel is the competence *to waive the right*, not the competence to represent himself." *Id*. (quotation and citation omitted). "[T]he trial court must be satisfied that the defendant is competent to stand trial" before it allows a defendant to waive his right to counsel. *Id*. "Competency to stand trial requires the ability to understand the nature of the proceedings, to consult with counsel, and to assist counsel in preparing a defense." *Id*. In making a competency determination, "the district court should consider the behavior, demeanor, and prior psychiatric history of the defendant." *Id*.

"[N]either the Supreme Court nor this court has ever adopted a list of essential points that must be conveyed to a defendant in order for a waiver of counsel to be

deemed knowing and voluntary." *Id*. at 722. In *United States v. Kiderlen*, 569 F.3d 358 (8th Cir. 2009), we "rejected the idea that a valid waiver of the right to counsel must invariably be accompanied by specific warnings about the range of possible punishments, possible defenses, and lesser included offenses." *Id*. (citing *Kiderlen*, 569 F.3d at 364, 366–67 (noting that the "key inquiry" is "whether the accused was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel.") (quoting *Meyer v. Sargent*, 854 F.2d 1110, 1114 (8th Cir. 1988))). "This court upholds the grant of a defendant's motion to represent himself 'if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self-representation.'" *Id*. (quoting *Kiderlen*, 569 F.3d at 364).

Our review of the record leads us to conclude that the district court did not err in finding that Tschacher's waiver was knowing and voluntary. Tschacher requested to represent himself at trial. The district court warned Tschacher that this was a "horrible mistake" and asked him "seriously to reconsider [his] decision to represent [himself]." *See Turner*, 644 F.3d at 722 ("The district court emphasized that it was a bad idea, and assured itself that his decision was not based on any shortcomings in his appointed counsel."). The district court explained that if Tschacher chose to represent himself, he would be held to the same standard as licensed attorneys; this meant that Tschacher would have to conduct jury selection, make an opening statement, make objections during trial to preserve issues for appeal, make a closing argument, and familiarize himself with the jury instructions. *See id.* ("Turner, no stranger to the criminal justice system, was told how his ignorance of the rules of procedure and evidence would prejudice his defense, and that his appointed counsel was far better positioned to put the government to its burden."). The district court gave Tschacher the opportunity to ask any questions regarding his self-representation. It also appointed Tschacher's former court-appointed counsel as Tschacher's stand-by counsel, explaining to Tschacher that the stand-by attorney would remain at counsel table with Tschacher so that Tschacher could consult with counsel regarding

questions about legal procedures. The court made clear that stand-by counsel could not give tactical or strategic advise. After a ten-minute recess, the district court again asked Tschacher whether he wanted to proceed pro se, and Tschacher indicated that he did. Upon review, we hold that "[t]he district court adequately warned [Tschacher] of the dangers of self-representation, and did not err in finding that he understood them and knowingly waived his right to counsel." *Id.*

B. *Motion to Suppress*

Tschacher argues that the district court erred in failing to suppress the evidence seized from the search of his vehicle because that search did not comply with *Arizona v. Gant*, 556 U.S. 332 (2009). "Under *Gant*, police may search the passenger compartment of a vehicle incident to arrest only if (1) the arrestee might have access to the vehicle at the time of the search, or (2) it is reasonable to believe the vehicle contains evidence of the offense of the arrest." *United States v. Hambrick*, 630 F.3d 742, 746 (8th Cir. 2011). In the present case, the district court adopted the magistrate judge's finding that neither of these factors were present at the time that Trooper Downing searched Tschacher's vehicle. *See Tschacher*, 2010 WL 2682517, at *3. According to Tschacher, this court's pre-*Gant* law interpreting *United States v. Belton*, 453 U.S. 454 (1981), was not clearly settled, meaning that the exclusionary rule applies and suppression of the evidence is warranted.

"In reviewing the denial of a motion to suppress, we examine the district court's findings of fact for clear error and review *de novo* whether the investigatory stop and search violated the Fourth Amendment." *United States v. Phillips*, 679 F.3d 995, 997 (8th Cir. 2012). Here, "[t]he district court determined that the evidence [seized from the vehicle] should not be suppressed because its discovery resulted from a search conducted in reasonable reliance upon this court's pre-*Gant* precedent governing searches incident to arrest." *United States v. Allison*, No. 10-3141, 2011 WL 6089885, at *1 (8th Cir. Dec. 7, 2011) (unpublished per curiam) (footnote omitted).

-14-

"[T]he Supreme Court [has recently] held that it [is] unnecessary to suppress evidence under *Gant* where the search occurred prior to *Gant*, stating that 'searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule.'" *Id.* (quoting *Davis v. United States*, 131 S. Ct. 2419, 2423 (2011). "Assuming, without deciding, that the search of [Tschacher's vehicle] was unconstitutional under *Gant*, we conclude that the incriminating evidence discovered should not be suppressed in light of *Davis*." *Id.* At the time that Trooper Downing searched Tschacher's vehicle incident to arrest, this court, "[a]pplying the *Belton* rule," had "upheld searches of automobiles incident to arrest where the arrestee has exited the vehicle and has been handcuffed and placed in a police officer's patrol car." *United States v. Hrasky*, 453 F.3d 1099, 1101 (8th Cir. 2006). Because Trooper Downing's search of Tschacher's vehicle "was permissible under binding pre-*Gant* precedent as part of a search . . . of the [vehicle] incident to arresting [Tschacher], the exclusionary rule is not applicable even if the search was illegal under *Gant*." *Allison*, 2011 WL 6089885, at \*1 (citing *Davis*, 131 S. Ct. at 2423–24); *see also United States v. Ball*, 449 F. App'x 527, 529 (8th Cir. 2011) (unpublished per curiam) (indicating that the search of the defendant's vehicle "was consistent with our longstanding interpretation of the vehicle search-incident-to-arrest exception" and "[a]ssuming, without deciding, [that] the search of [the defendant's] vehicle was unconstitutional under *Gant*, [the defendant] [was] not entitled to exclusion of the evidence because, under [*Davis*], the police officers reasonably relied on binding appellate precedent").

## C. *Sufficiency of the Evidence*

Tschacher maintains that the district court erred in denying his motion for judgment of acquittal because the evidence did not establish his "knowing possession" of the firearms. According to Tschacher, the evidence established that the firearms belonged to his wife, not him.

"We review *de novo* the denial of a motion for judgment of acquittal." *United States v. Clark*, 668 F.3d 568, 573 (8th Cir. 2012) (quotation and citation omitted).

-15-

"We apply the same standard of review to the district court's ruling on a motion for judgment of acquittal as we do to a sufficiency of the evidence challenge." *Id.* (quotation and citation omitted). "[W]e view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence." *Id.* (alteration in original) (quotation and citation omitted). "We must affirm a jury verdict if, taking all facts in the light most favorable to the verdict, a reasonable juror could have found the defendant guilty of the charged conduct beyond a reasonable doubt." *Id.* (quotation and citation omitted).

"'To convict [Tschacher] as a felon in possession of a firearm, the government must prove beyond a reasonable doubt (1) a previous conviction for a crime punishable by imprisonment over one year, and (2) knowing possession of a firearm (3) that was in or affected interstate commerce.'" *United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011) (quoting *United States v. Smart*, 501 F.3d 862, 865 (8th Cir. 2007)). Here, Tschacher only "argues [that] the government failed to prove the second element—knowing possession of a firearm." *Id.* We hold that the government adduced sufficient evidence to show Tschacher's knowing possession of a prohibited firearm.

> "Possession can be actual or constructive. Actual possession is the knowing, direct, and physical control over a thing." *United States v. Serrano–Lopez*, 366 F.3d 628, 634 (8th Cir. 2004) (citation omitted). "Constructive possession is established by proof that the defendant had control over the place where the firearm was located, or control, ownership, or dominion of the firearm itself." *United States v. Cox*, 627 F.3d 1083, 1085 (8th Cir. 2010). "Possession may be joint; it need not be exclusive," *Smart*, 501 F.3d at 865, and "may be based on circumstantial evidence which is 'intrinsically as probative as direct evidence.'" *United States v. Bradley*, 473 F.3d 866, 867 (8th Cir. 2007) (quoting *United States v. Patterson*, 886 F.2d 217, 219 (8th Cir. 1989) (per curiam)).

*Id.*

-16-

"A reasonable jury could find [that Tschacher] knowingly possessed the handgun [and rifle]." *Id*. Tschacher was the sole passenger in the truck that was jointly registered to himself and his wife. The evidence presented at trial showed that the handgun was found in a zippered bag that both Tschacher and his wife used to hold items. According to Trooper Downing, the bag was "within arm's reach easily" of the driver. Tschacher expressed no surprise to Trooper Downing when he learned that Trooper Downing found the guns, and Tschacher never told Trooper Downing that he was unaware of the guns' presence in the truck. In fact, after learning that Trooper Downing discovered the guns, Tschacher asked Trooper Downing to obtain some legal papers from the pickup truck that were "about the guns" and told Trooper Downing where the papers were located. Tschacher also told Trooper Downing that "he takes those papers with him often or all the time." Tschacher's wife testified that Tschacher was present on both occasions when she purchased the guns, and, upon questioning, confirmed that Tschacher knew that there could be guns in the truck, although she attempted to hide them from Tschacher. "Considering these facts, it was reasonable for the jury to infer [that Tschacher] knew about and had control over the firearm[s] . . . ." *Brown*, 634 F.3d at 439.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____

-17-