# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2821

_____

United States of America

*Plaintiff - Appellee*

v.

James Lavon Miller

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: April 10, 2013
Filed: August 27, 2013

_____

Before LOKEN and GRUENDER, Circuit Judges, and PHILLIPS,[1] District Judge.

_____

PHILLIPS, District Judge.

Following a bench trial, James Lavon Miller was convicted of four counts of making false claims against the United States, in violation of 18 U.S.C. § 287. He

_____

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri, sitting by designation.

appeals his convictions, arguing that the district court[2] erred by not renewing a *Faretta* inquiry at the close of his case. Miller also challenges the sufficiency of the evidence supporting his convictions. We affirm.

## I. Background

Miller was charged in a four-count indictment with making false claims against the United States. The Government alleged that the tax returns Miller filed for years 2005-2008 contained fraudulent amounts of interest income, tax withholding, and refunds owed. At his initial appearance, Miller stated he wanted to represent himself. Miller was appointed a federal public defender, but he later filed a document stating he would not use the public defender's services. The Government moved for a mental evaluation and a competency hearing, pursuant to 18 U.S.C. § 4241. The Government also moved for a hearing regarding Miller's request to represent himself, pursuant to *Faretta v. California*, 422 U.S. 806 (1975).

A combined competency and *Faretta* hearing was held on February 6, 2012. The magistrate judge extensively questioned Miller about his understanding of the trial process, the disadvantages of proceeding without counsel, and his desire to proceed pro se. The magistrate informed Miller that she did not think his decision to represent himself was in his best interest, and that a federal public defender offers "the best experienced package available in terms of representing somebody on a federal felony." Miller affirmed that his decision was voluntary. Based on his mental evaluation and responses to questions, the magistrate found Miller competent to stand trial and to represent himself, and to have knowingly and voluntarily waived his right to counsel.

---

[2]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

Thereafter, the Government sent Miller discovery materials. He returned them with a handwritten note, stating: "This Law does not apply to James Lavon (Seal)." As a result of this and other actions, the Government requested a supplemental *Faretta* hearing. At the second hearing on March 30, 2012, the magistrate judge permitted the Government to question Miller about his desire to represent himself, the sentences he faced, and his understanding of the trial process. At the conclusion of the hearing, the magistrate was satisfied with Miller's acknowledgment that he understood the issues facing him, and that his responses "in no way contradict[ed] the comprehensive order" issued after the first hearing. The magistrate determined Miller could continue in his pro se capacity.

Miller represented himself throughout the subsequent proceedings. Miller also waived a jury trial. Stand-by counsel was present during his *Faretta* hearings and trial.

While awaiting trial, Miller told a fellow inmate he was guilty but was representing himself to appear innocent. Miller stated that "the right perception can fool anyone," and that he would look innocent because he was an older, well-spoken Mennonite with supporters in the courtroom.

At trial on May 7, 2012, the Government submitted evidence of the following. Miller is an Iowa farmer who did not file taxes for approximately ten years. In 2005, he was held in civil contempt for failing to comply with an IRS summons for tax information. In 2008 and 2009, Miller filed federal income tax returns for years 2005-2008. Miller filed two different 2005 returns on the same day. In every return, Miller listed false amounts of interest income, tax withholding, and refunds owed.

During interviews with IRS agents, Miller described his different methods of creating the interest income figures in his returns. In his 2006 return, Miller listed the sum of his credit limits at various stores and banks. Miller listed the same amounts

of interest income and withholding in his 2006 return as in his first 2005 return. In his 2007 return, Miller listed the sum of his 2001-2007 bank deposits. In his 2008 return, Miller listed the sum of his 2008 bank deposits. Miller told the IRS agents that his signature generated "credits" at these financial institutions. He also stated that the interest income he claimed redeemed these credits. Based on these figures, Miller claimed he was entitled to tax refunds.

Miller's figures were inconsistent with IRS records. The IRS received no records of interest payments to or federal withholding from Miller for 2005 and 2006. The IRS also did not receive withholding records for 2007 and 2008. However, it did receive records of minimal interest payments that Miller did not report in his 2007 and 2008 returns.

Additionally, Miller created sham financial instruments entitled "Bonded Promissory Notes." Miller submitted these to the IRS for payment in the amounts of $10,000,000; $19,200; and $17,200. Miller stated to IRS agents that he wasn't sure if the notes had value, but he filed them "to see if they would work as payment" for his tax debt. When the agents informed him that the notes were fictitious, Miller stated he would continue to file them until he was proven wrong.

Miller did not testify or present evidence in his defense. When the district court asked Miller for closing argument, the following exchange occurred:

> THE COURT: Thank you. Mr. Miller, closing arguments, and one last opportunity to attempt to persuade the decision maker that it should rule in your favor. Would you like to say anything else in that regard?
>
> THE DEFENDANT: Several comments. One is there is an IRS agent in California by the name of Joe Banister that twice was brought before a court case and he was a CID agent and won his case because the

Government had—did not, could not prove that he was someone that was required to be in that tax system; but—

THE COURT: This was a—if this was a failure to file case, they would have to prove that you had taxable income. That is not this kind of case. This case, they say that you fraudulently submitted information and that is a different kind of case.

THE DEFENDANT: Okay. I do not understand this process completely and I am not going to testify about it only to say that there was an accountant that did this for me and apparently there were people getting these refunds on a regular basis. I trusted this accountant—

THE COURT: This is not evidence. I understand. Go ahead.

THE DEFENDANT: I trusted this accountant to do these returns in this fashion and if—and where I have made mistakes as I previously said, I apologize, I am sorry. I was told it was legitimate; but back to the paperwork that I had submitted to the Court, this is what I am standing on, the paperwork that I would like for you to take judicial notice of because that is how I currently—my position is and what I am standing on, Executing as a Deed, Writ of Mandamus, Notice of Judgment, Blackstone's Book of Authority, the Plea to the Crown, and the paperwork that I submitted last Friday.

THE COURT: Okay. Now, before you just made your last statement, you know, you referred to an accountant and some—and your state of mind. You understand there's no evidence of that and I would let you reopen your evidence if you want to testify about that. If you did that you would be subject to cross-examination about who this person is and everything else, but I want you to understand your statements that you just made in your closing argument, because you didn't offer them as evidence when I asked you for evidence and testimony, it can't be considered. Do you understand that?

THE DEFENDANT: Right. Right.

THE COURT: Do you want to testify or not?  Either is fine with me.

THE DEFENDANT: No, I don't, but I know they know I didn't do these returns.

The district court found Miller guilty on all counts.  Miller was sentenced to four concurrent 33-month prison terms, representing an 18-month downward variance from the sentencing guideline range of 51-60 months.

## II.    Discussion

On appeal, Miller argues the district court erred by not renewing a *Faretta* inquiry during his trial and by convicting him based upon insufficient evidence.

### A.    Renewed *Faretta* Inquiry

Miller contends the district court should have renewed a *Faretta* inquiry during his trial because circumstances had changed since his previous *Faretta* hearing. Specifically, Miller argues his closing argument revealed:  1) he did not understand the proceedings; and 2) he possessed potentially exculpatory evidence of a trusted accountant, but neither realized its importance nor how to present it.  Miller argues the district court's failure to inform him about the knowledge element of and possible defenses to his charges during any of his *Faretta* hearings, coupled with the time lapse since his last *Faretta* hearing, exacerbated this change in circumstances.

We review de novo a district court's decision to allow a defendant to proceed pro se.  *United States v. Tschacher*, 687 F.3d 923, 931 (8th Cir. 2012) (citation omitted).  "Under the Sixth Amendment, a criminal defendant has the right to self-representation along with the right to the assistance of counsel."  *Id.* (internal quotation omitted).  Once invoked, a defendant's right to self-representation "is not

absolute." *Id.* (quotation omitted). Whether the defendant's waiver of his right to counsel is adequate "depends on the particular facts and circumstances of each case, including the background, experience, and conduct of the accused." *Id.* (quotation omitted).

To invoke his right to represent himself, the defendant must knowingly and intelligently forgo the benefits of counsel. *Id.*; *Faretta*, 422 U.S. at 835. The trial court must "rigorously convey warnings of the pitfalls of proceeding to trial without counsel," so the record will show the defendant "knows what he is doing and his choice is made with eyes open." *Tschacher*, 687 F.3d at 931 (quotations and alterations omitted). The court must be satisfied that the defendant's waiver of counsel is voluntary and knowing. *Id.* However, "the competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right*, not the competence to represent himself." *Id.* (emphasis in original) (quotation omitted). A defendant's choice to waive counsel and proceed pro se "must be honored, even though the defendant may conduct his own defense to his detriment by relinquishing the benefits associated with the right to counsel." *Id.* (quotation and alterations omitted).

Our review of the record leads us to conclude that the district court did not err by not conducting a third *Faretta* inquiry. Miller had the benefit of two prior hearings, the last one occurring just five weeks before trial. During both hearings, the pitfalls of self-representation were rigorously conveyed to Miller, and the court was satisfied that his election to proceed pro se was knowing and voluntary under all the circumstances. *See Tschacher*, 687 F.3d at 932 ("The district court warned Tschacher that this was a 'horrible mistake' and asked him 'seriously to reconsider [his] decision to represent [himself].'"); *United States v. Turner*, 644 F.3d 713, 722 (8th Cir. 2011).

Miller argues the district court should have discussed with him the knowledge element of his charges and possible defenses. However, we have "rejected the idea that a valid waiver of the right to counsel must invariably be accompanied by specific warnings about the range of possible punishments, possible defenses, and lesser included offenses." *Tschacher*, 687 F.3d at 932 (quoting another source) (citing *United States v. Kiderlen*, 569 F.3d 358, 364, 366-67 (8th Cir. 2009) (noting that the "key inquiry" is "whether the accused was made sufficiently aware of his right to have counsel and of the possible consequences of a decision to forgo the aid of counsel.")). "Neither the Supreme Court nor this court has ever adopted a list of essential points that must be conveyed to a defendant in order for a waiver of counsel to be deemed knowing and voluntary." *Id.* (alteration omitted); *Turner*, 644 F.3d at 722; *Kiderlen*, 569 F.3d at 366-67. We decline to do so here.

Further, Miller's statements during closing argument merely revealed flaws in his self-representation, rather than changed circumstances necessitating another *Faretta* inquiry. The district court offered Miller the opportunity to reopen his case and present evidence about the accountant, but he declined to do so. Miller's failure to present evidence in his defense does not invalidate his voluntary election to represent himself. *Tschacher*, 687 F.3d at 931 ("A defendant's choice to proceed pro se 'must be honored,' '[e]ven though [the] defendant may conduct his own defense to his detriment by relinquishing the benefits associated with the right to counsel.'") (quotation omitted); *United States v. Ladoucer*, 573 F.3d 628, 634 (8th Cir. 2009) ("Thus, while it is clear that [defendant] performed poorly in representing himself, his performance at trial has no bearing on our conclusion that his waiver of counsel was voluntary, intelligent and knowing."). Instead, "[t]his court upholds the grant of a defendant's motion to represent himself 'if the record shows either that the court adequately warned him or that, under all the circumstances, he knew and understood the dangers and disadvantages of self-representation.'" *Turner*, 644 F.3d at 722 (quoting *Kiderlen*, 569 F.3d at 364). Upon review, we hold that this record clearly shows both. The district court did not err.

## B.     Sufficiency of the Evidence

Miller also challenges the sufficiency of the evidence to support his convictions. "We review the sufficiency of the evidence after a bench trial in the light most favorable to the verdict, upholding the verdict if a reasonable factfinder could find the offense proved beyond a reasonable doubt, even if the evidence rationally supports two conflicting hypotheses." *United States v. Huggans*, 650 F.3d 1210, 1222 (8th Cir. 2011) (quotation omitted). "We will reverse only if the factfinder must have had a reasonable doubt concerning one of the essential elements of the crime." *Id.* (quotation and alterations omitted).

To convict Miller of making false claims against the United States, the Government must show Miller made or presented to any department or agency of the United States "any claim . . . knowing such claim to be false, fictitious, or fraudulent[.]"  18 U.S.C. § 287.  Miller contends the Government did not prove he knew his claims were false because he had a sincere belief that his returns–including the false amounts of interest income, tax withholding, and refunds owed–reflected a method of redeeming credits in his name.

However, after a review of the evidence presented at trial, Miller's argument fails.  A review of the returns and how Miller created the figures therein establishes he did not have a sincere belief that his claims were truthful.  First, Miller admitted to IRS agents that the figures were not actually interest income or tax withholding from financial institutions.  Further, Miller admitted he used different methods to calculate the interest income reported in his various returns.  For example, in 2005 and 2006, he listed the sum of his credit limits at various institutions.  In 2007 and 2008, he changed methods to instead report the sum of his bank deposits as interest income.  During all four years, the claims Miller submitted were incongruous.  For example, Miller's first 2005 return claimed $161,100 in interest income, $161,099 in withholding, and $130,851 as a refund.  His second 2005 return claimed $1,132,522

in interest income, $1,082,844 in withholding, and $715,899 as a refund. Miller also stipulated that none of the financial institutions from which he reported interest income and withholding would have any records of such transactions. Lastly, Miller's returns did not contain any reference to redeemed credits or the theory under which he submitted his claims.

The evidence establishing that Miller knew the claims were false is corroborated by Miller's history of tax evasion. In addition to the 2005 finding of civil contempt for his failure to comply with an IRS summons for tax information, Miller repeatedly filed sham financial instruments with the IRS. When informed by IRS agents that the instruments were fictitious, Miller defiantly stated that he would continue to file them until he was proven wrong. Finally, Miller's statements to a fellow inmate that he was guilty and was representing himself to appear innocent further corroborate the Government's evidence of Miller's guilt.

Viewing the evidence in the light most favorable to the verdict, we conclude that a reasonable factfinder could convict Miller of making false claims against the United States.

## III. Conclusion

Accordingly, we affirm the judgment of the district court.

_____