## IN THE COURT OF APPEALS OF IOWA

No. 13-1312
Filed December 24, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRYAN KEITH BEY,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Pottawattamie County, James Heckerman (hearing) and Kathleen Kilnoski (trial.)


        Bryan Bey appeals from his conviction for first-degree and second-degree kidnapping.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney General, Matthew Wilber, County Attorney, and Jon Jacobmeier, Assistant County Attorney, for appellee.


        Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

Bryan Bey appeals from a jury verdict finding him guilty of kidnapping in the first degree and kidnapping in the second degree. He contends the district court erred by engaging in an inadequate colloquy wherein Bey waived his right to counsel and chose to represent himself, rendering his waiver not knowing, intelligent, and voluntary. He further contends the court erred, when the deliberating jury asked whether a hand or foot is considered a dangerous weapon, by instructing the jury to reread the instruction on what constitutes a dangerous weapon. We affirm.

## I.    BACKGROUND FACTS AND PROCEEDINGS.

On May 30, 2012, at about 5:00 p.m., law enforcement officers discovered a woman, later identified as Tabitha Proplesch, severely beaten in a truck by the side of the road in Pottawattamie County. A nearby witness advised law enforcement officers that a man, later identified as Bey, drove his truck to the area, ran out of gas, left the truck, and hitched a ride away.

At trial, Proplesch testified that on May 29th, she and Bey were in a friend's apartment smoking methamphetamine. Bey took away her keys and phone and repeatedly punched her in the face and body. Following an extended physical attack, Proplesch escaped out a bedroom window. Bey caught up with Proplesch and kicked her in the head multiple times. Bey then placed his hand over Proplesch's mouth until she passed out. She woke up in the backseat of a vehicle. Bey handcuffed her and stabbed her in the knee with something sharp that looked like a letter opener. Proplesch then fell in and out of consciousness

for some time but was aware the vehicle was moving. Eventually the vehicle stopped, and Proplesch next saw the law enforcement officers approaching. The State charged Bey with kidnapping in the first degree and second degree.

The trial court initially appointed Jennifer Solberg to represent Bey but she had to withdraw, and the court appointed Michael Williams of the Sioux City office of the State Public Defender. Bey was unhappy with Williams and filed a motion to dismiss counsel, a motion to proceed "pro se and without counsel," an ethics complaint against Williams, and a motion for a protective order against Williams. The court appointed Greg Jones, supervisor of the Sioux City office of the State Public Defender. Bey maintained he wished to proceed to trial pro se. The court held a hearing and conducted a colloquy to secure a waiver of Bey's right to trial counsel. Granting Bey's motion to proceed pro se, the court appointed Greg Jones as standby counsel. Bey then filed a motion to dismiss standby counsel, asserting various complaints against Jones. The court held another hearing and denied the motion. Bey then filed a motion for appointment of "hybrid counsel," which the court denied.

The jury trial began on April 23. Bey made a motion for judgment of acquittal, which the court denied. During deliberations, the jury presented the court with the following questions: "Can a part of your body (i.e. hand, foot) be considered a dangerous weapon? Can a body part be considered an instrument or device?" After conferring with the parties, the court instructed the jury to reread the instructions. The jury returned verdicts of guilty on both counts.

On appeal, Bey contends the court's colloquy in which he waived his right to counsel was inadequate and consequently his waiver of the right to counsel was not knowing, voluntary, and intelligent. He further contends the court erred in instructing the jury to reread the instruction and should have instructed the jury that a hand or foot is not a dangerous weapon.

## II. STANDARDS OF REVIEW.

We review constitutional issues related to right to counsel or self-representation de novo. *State v. Johnson*, 756 N.W.2d 682, 686 (Iowa 2008). We reverse a discretionary decision only if there is an abuse of discretion. *State v. Watkins*, 463 N.W.2d 15, 18 (Iowa 1990).

## III. ANALYSIS.

### A. Adequacy of the Court's Colloquy in Securing Waiver of Right to Counsel.

Bey maintains the district court's colloquy during the hearing in which he waived his right to counsel was constitutionally inadequate and his wavier was not knowing, intelligent, and voluntary. "The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004). The Sixth and Fourteenth Amendments also guarantee the defendant the right to self-representation. *Farettta v. California*, 422 U.S. 806, 807 (1975). A defendant's constitutional right to counsel is effective until waived. *Hannon v. State*, 732 N.W.2d 45, 52 (Iowa 2007). A waiver of the right to counsel must be voluntary, knowing, and intelligent. *Id.* In order for the defendant to waive the right to

counsel, we require courts to engage in a colloquy to apprise the defendant of the dangers and disadvantages inherent in self-representation. *Id.* at 53. The burden is on the State to prove that a valid wavier exists. *Id.* The sufficiency of the colloquy is to be determined by the surrounding circumstances. *Id.*

Bey submits that under *State v. Cooley*, 608 N.W.2d 9, 15 (Iowa 2000), for a waiver colloquy to be sufficient, it must ensure the defendant fully understands "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter as a whole." *Cooley*, 608 N.W.2d at 15 (quoting *Von Moltke v. Gillies*, 332 U.S. 708, 723-24 (1948)). Bey asserts, "In the present case the court did not discuss the possible defenses and circumstances in mitigation of the kidnapping offense, nor any other facts essential to Bey's understanding of the whole matter." Our supreme court has stated repeatedly— and reiterated in *Cooley*—that the degree of inquiry depends upon the facts and circumstances of the specific case. *See Hannon*, 732 N.W.2d at 53; *Majerus*, 722 N.W.2d 179, 182 (Iowa 2006); *Cooley*, 608 N.W.2d at 15; *State v. Stephenson*, 608 N.W.2d 778, 782 (Iowa 2000). To the extent Bey asserts *Cooley* establishes a mandatory warning for the waiver colloquy, we conclude that discussing the possible defenses and mitigating circumstances may have been necessary under the facts of *Cooley* (or rather the pre-*Faretta* case *Von*

*Moltke*, which *Cooley* quotes for this language) but may not be necessary under a different set of facts.[1]

When a court conducts a colloquy allowing a criminal defendant to waive his right to counsel, the court must inform the defendant about the "dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997) (internal quotations omitted).

In this case, the court held a hearing on Bey's motion to proceed pro se. On our review of the transcript, we note the court recounted Bey's extensive experience in criminal justice system; recited the charges, their level of offense, the lesser-included offenses, and the possible penalties; ascertained Bey's lack of experience with jury selection, trial procedure, rules of evidence, presentation of evidence, and jury instructions; and the advantages involved with having a trained attorney conduct the trial. Bey indicated to the court that he was studying and learning the applicable law and rules. The judge inquired of Bey, "What makes you feel that you are competent to represent yourself in this type of proceeding?" to which Bey responded, "Because nobody can cross-examine the State's witnesses better than I." The judge further explicitly stated that he was not in favor of Bey representing himself and he strongly advised Bey against it.

---

[1] We note that the Eighth Circuit Court of Appeals has rejected the argument that a waiver colloquy must include a discussion of the possible defenses. *See United States v. Miller*, 728 F. 3d 768, 773-74 (8th Cir. 2013) ("[W]e have rejected the idea that a valid waiver of the right to counsel must invariably be accompanied by specific warnings about the range of possible punishments, possible defenses, and lesser included offenses."); *United States v. Tschacher*, 687 F. 3d 923, 932 (8th Cir. 2012); *United States v. Kiderlen*, 569 F. 3d 358, 364 (8th Cir. 2009).

Bey stated repeatedly he understood the court's admonitions but insisted he wished to proceed to trial representing himself.

The court's colloquy established the dangers and disadvantages in self-representation more than adequately, and Bey repeatedly stated he understood these and wished to proceed pro se. Bey clearly is now unhappy with the outcome of his decision, but the only deficiencies he alleges in the waiver colloquy are that the court did not discuss "the possible defenses and mitigating circumstances." Even with the assistance of experienced appellate counsel, he fails to identify one single defense or mitigating circumstance about which he should have been apprised. On our review of the evidence, we are satisfied that under the circumstances of this case the court engaged in an adequate discussion with Bey, resulting in a waiver that, while unwise, was nonetheless knowing, intelligent, and voluntary.

**B.** **Whether the Court Erred in Instructing the Jury to Reread the Instruction.**

**1.** **Error Preservation.**

The State asserts Bey did not preserve this claim for review because he never specifically requested that the jury be instructed that a hand or a foot cannot be a dangerous weapon, and standby counsel, Jones, recommended the court instruct the jury to reread the instruction. The court discussed the jury's questions with Bey, Jones, and the State. Bey insisted the law held a hand or foot cannot be a dangerous weapon, specifically disagreeing with Jones's recommendation. We find he preserved the issue adequately.

## 2. Standard of Review.

Bey contends the court instructing the jury incorrectly constitutes a violation of his due process rights and, because a constitutional issue is raised, the standard of review is de novo. Bey cites *State v. Fletcher*, 525 A.2d 535, 538 (Conn 1987), however, in that case the Connecticut Supreme Court stated that the defendant's constitutional rights were implicated by the court failing to instruct the jury when its inquiries "were directed to the law of self-defense and to the requisite 'beyond a reasonable doubt' standard for conviction." 525 A.2d at 538. We find no Iowa authority indicating delivery of an incorrect jury instruction is per se a constitutional question. Bey does not cite any. Iowa Rule of Civil Procedure 1.925 (made applicable through Iowa Rule of Criminal Procedure 2.19(5)(f)) provides, "While the jury is deliberating, the court may *in its discretion* further instruct the jury, in the presence of or after notice to counsel." (Emphasis added.) Thus, on our review, we reverse only for an abuse of discretion. *See also Watkins*, 463 N.W.2d at 18 ("[A] discretionary ruling is presumptively correct, and on appeal will be overturned only where an abuse of discretion has been demonstrated. An abuse is found only where the discretion is exercised on grounds or for reasons clearly untenable.").

## 3. Merits.

The jury was instructed that to find Bey guilty of kidnapping in the second degree, they had to find he was "armed with a dangerous weapon" at the time of the confinement or removal. *See* Iowa Code § 710.3. The jury was further instructed:

A "dangerous weapon" is any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death. It is also any sort of instrument or device which is actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

During deliberations, the jury presented the court with the following questions: "Can a part of your body (i.e. hand, foot) be considered a dangerous weapon? Can a body part be considered an instrument or device?" The court reconvened the parties, including Jones serving as standby counsel. The prosecutor represented that it was his understanding a hand or foot by itself cannot be a dangerous weapon, however, in appropriate circumstances, a shoe can be. The State preferred the jury be instructed to reread the instructions. Bey insisted a hand or foot cannot be a dangerous weapon. When the court asked Jones for input, Jones stated instructing the jury specifically that hands and feet are not dangerous weapons would lead the jury to conclude shoes could *not* be dangerous weapons. He recommended the court instruct the jury to reread the instruction. Bey objected to this recommendation, insisting again that the law specifies hands and feet are not considered dangerous weapons. The court made the following statement:

> [T]he State's thrust and argument regarding the weapon was not that the boot or shoe was being used as a weapon but that the dagger was the weapon.
> And, in fact, we specifically instructed the jury that a knife, by law, is a dangerous weapon, and while I think there could be some evidence in the record that would support a jury finding that Mr. Bey used a boot or a shoe to inflict—to kick the victim, I don't really think that was the theory of the State's case, so my preference is just to instruct the jury that they have received all of the instructions from the Court, and that they should review those instructions.

Bey contends the court's response to reread the instruction failed to resolve or clarify the jurors' confusion as to the meaning of "dangerous weapon." The language of the dangerous weapon instruction is very close to the language of Iowa Code section 702.7, which defines "dangerous weapon" as:

> any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed, except a bow and arrow when possessed and used for hunting or any other lawful purpose. Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon. Dangerous weapons include but are not limited to any offensive weapon, pistol, revolver, or other firearm, dagger, razor, stiletto, switchblade knife, knife having a blade exceeding five inches in length, or any portable device or weapon directing an electric current, impulse, wave, or beam that produces a high-voltage pulse designed to immobilize a person.

Thus, section 702.7 lists "per se" dangerous weapons, including guns and knives, and provides that an instrument or device may become a dangerous weapon based on the manner of its use. *See State v. Ortiz*, 789 N.W.2d 761, 765-68 (Iowa 2010). In a case that predates section 702.7, our supreme court found hands to be dangerous weapons when the defendant strangled a child and beat him to death. *See State v. Heinz*, 275 N.W. 10, 21 (Iowa 1937).[2]

We conclude the court did not abuse its discretion when it instructed the jury to reread the dangerous weapon instruction. Under the evidence available in

_____

[2] Our court has, as recently as January 2014, found the use of fists and strangulation shows malice aforethought, citing approvingly the conclusion in *Heinz* that the deliberate, violent use of a deadly weapon is evidence of malice and the finding that the perpetrator's hands and fists were deadly and dangerous weapons. *See Martin v. State*, No. 12-2240, 2014 WL 69542 (Iowa Ct. App. January 9, 2014).

the record, the jury could have found the dagger or letter-opener to be a dangerous weapon based on its use; it also could have found Bey's use of his hands and feet to punch and kick Proplesch rendered them dangerous weapons. Either way, the instruction itself was sufficiently clear for the jury to reach a conclusion, and the court was concerned if it gave a specific "yes" or "no" answer, it could confuse the jury on whether shoes or boots could be considered dangerous weapons. Under the circumstances, we do not believe the court's decision was clearly untenable. The court did not abuse its discretion.

## IV.    CONCLUSION.

We find Bey knowingly, intelligently, and voluntarily waived his right to counsel and chose to represent himself. The court was not required to include any particular warning in its colloquy during the waiver hearing and its colloquy was, under the facts and circumstances, more than adequate. We further find the court did not abuse its discretion in answering the deliberating jury's questions by instructing them to reread the already adequate instruction. We affirm.

**AFFIRMED.**