# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1123
_____

United States of America

*Plaintiff - Appellee*

v.

Jacques Eviglo, doing business as Global Income Tax Services

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls
_____

Submitted: February 13, 2020
Filed: May 5, 2020
[Unpublished]
_____

Before LOKEN, BENTON, and KELLY, Circuit Judges.
_____

PER CURIAM.

A jury convicted Jacques Eviglo of twenty-five counts of making false claims against the United States in violation of 18 U.S.C. § 287 and five counts of wire fraud

in violation of 18 U.S.C. § 1343. The district court[1] sentenced Eviglo to 108 months imprisonment, the bottom of his advisory guidelines sentencing range. Eviglo appeals, arguing the evidence was insufficient to convict him of knowingly making false claims and acting with the intent to defraud, and the sentence is substantively unreasonable. Reviewing sufficiency of the evidence *de novo*, but deferring to the verdict unless no reasonable jury could find Eviglo guilty beyond a reasonable doubt, and reviewing the substantive reasonableness of his sentence for abuse of discretion, we affirm.

## I. Sufficiency of the Evidence.

College-educated Eviglo was born in 1981, came to this country in 1998, and prepared and electronically filed over two thousand federal income tax returns in tax years 2012-2016, doing business as Global Income Tax Services in Sioux Falls, South Dakota. His client base was primarily non-English-speaking immigrants working at facilities such as meat packing plants in Sioux Falls and western Minnesota. He used Drake Software to prepare and file clients' returns. The Internal Revenue Service ("IRS") notified Drake if a return was accepted or rejected. A tax preparer using Drake, which is designed for professionals, is presumed to know what data is required. Eviglo also used a "bank product" in which the IRS transmitted refunds into a depositary bank account, and the tax preparer collected fees from that account.

The IRS began investigating Eviglo in 2016 after several taxpayers complained they did not receive full refunds from Global Tax and portions of their returns were inaccurate. At trial, the jury heard two days of testimony from Eviglo's taxpayer clients whose returns formed the basis of the charged offenses. Nearly all spoke no English and had little tax law knowledge or experience. They met with Eviglo at

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

Global Tax, where he asked only for their W-2 form, Social Security number, and immigration documents or a driver's license. When Eviglo finished the return on his computer, he handed the client, without explanation, papers to sign which included a Bank Product Information form listing the fees to be collected. Before leaving, the client received the tax return in a sealed envelope with a Post-It note stating the expected refund. The client paid $50 to $150 cash. Eviglo entered a "bank product" account number on the tax return and extracted substantial additional fees from accounts that received an IRS refund before remitting the remainder of the refund to the taxpayer client.

The government presented evidence that the refund rate for 2,255 returns Eviglo and Global Tax prepared and filed for the years in question was nearly 100%. A high percentage included Schedule A itemized deductions for clients who lived in apartments and therefore had no mortgage or real estate tax deductions. Nearly all listed "Other taxes" on line 8 of Schedule A, including clearly non-deductible entries such as "general household expenses." Other refund-generating false entries included Schedule C business losses for clients who did not own businesses, false work opportunity credit forms, and labeling married clients "single" to falsely claim dual earned income credits. At sentencing, Eviglo agreed with the IRS estimate that the total loss to the IRS was $2,543,286.41. Records from the depositary bank and Drake Software showed Eviglo extracted $863,185 in fees from IRS refunds between 2014 and 2017.

On appeal, Eviglo argues there was insufficient evidence that he knew the claimed itemized deductions on each return were false or that he acted with intent to defraud. He notes that IRS agent witnesses testified that the "general household expenses" deductions were all clearly marked on Global Tax returns. He argues the fact it is obvious to an experienced IRS agent that personal, household, and family expenses are not deductible "does not mean that a solo practitioner tax preparer knew that as well." The fact that Eviglo repeated this and other clearly stated errors on

hundreds of tax returns "suggests that he was confused or uninformed, not that he acted with the intent to defraud."

To convict Eviglo of making false claims against the United States for tax refunds, the government must prove he made the claims "knowing such claim[s] to be false, fictitious, or fraudulent." 18 U.S.C. § 287. To convict of wire fraud, the government must prove Eviglo "devised . . . any scheme or artifice to defraud." 18 U.S.C. § 1343. Both knowledge a claim is false and intent to defraud may be proved by circumstantial evidence. If the victims suffered tangible loss, "the scheme itself often serves as evidence of a defendant's intent to defraud." United States v. Walker, 818 F.3d 416, 421 (8th Cir. 2016) (quotation omitted).

Here, as in United States v. Miller, "[a] review of the returns and how [Eviglo] created the figures therein establishes he did not have a sincere belief that his claims were truthful." 728 F.3d 768, 774-75 (8th Cir. 2013). Eviglo's tax preparer files contained no documentation supporting the false information he entered on clients' returns. His immigrant clients all testified that they did not provide supporting information, that Eviglo did not explain the documents they were signing, and that he placed their returns in sealed envelopes they were unlikely to open. He did not discuss the additional fees he would be taking or the depositary accounts he was opening where fees could be extracted before clients received their refunds. Given the extensive nature and duration of the scheme, and the fact that improper refunds were claimed on nearly every return, we conclude the evidence was more than sufficient for a reasonable jury to find that Eviglo knowingly submitted hundreds of false claims to the IRS, and devised a scheme to defraud his clients and the IRS with the requisite intent to defraud.

-4-

## II. Reasonableness of the Sentence.

Based on the conceded level of loss and enhancements for use of sophisticated means, large number of vulnerable victims, and abuse of a position of trust, the district court determined that Eviglo's advisory guidelines sentencing range was 108 to 135 months imprisonment. After a lengthy explanation, the court denied Eviglo's request for a downward variance and sentenced him to 108 months, noting that 1,455 victims was the largest number the court had encountered, and that Eviglo had taken advantage of people in circumstances like his own who now face potential tax interest and penalties.

On appeal, Eviglo argues the 108-month sentence is substantively unreasonable because he has a minimal criminal history, a long history of educational and professional achievements, and is a "dedicated, committed, and responsible" father, child, friend, and member of his church. The district court expressly considered Eviglo's personal characteristics, positive qualities, and extensive support from his family and community supporters. A within range sentence is presumptively reasonable, and the district court has wide latitude to weigh the 18 U.S.C. § 3553(a) sentencing factors. United States v. Huston, 744 F.3d 589, 593 (8th Cir. 2014). We conclude this is not "the unusual case when we reverse a district court sentence . . . as substantively unreasonable." United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc). There was no abuse of the district court's substantial sentencing discretion.

The judgment of the district court is affirmed.

_____